# CHARLESTON

## LAIDLEY *v*. REYNOLDS.

Submitted September 7, 1905.    Decided November 28, 1905.

1. FRAUDULENT CONVEYANCE—*Bill to Set Aside Deed—Pleading—Limitations*.

    A bill to subject land of a wife to pay a debt of her husband on the claim that it was paid for by the husband's money, and conveyed to the wife, with intent to defraud creditors on the part of the husband, must charge notice on the part of the wife of the husband's fraudulent intent, in order to make it a bill for relief on the claim of fraud in fact; otherwise, it is to be regarded a bill to annul a voluntary conveyance, and the statute limiting suits to set aside a voluntary conveyance to five years applies. (p. 419.)

2. JUDGMENT LIEN—*Death of Creditor—Revival of Lien*.

    The lien of a judgment exists, though execution be suspended by the death of the creditor, and may be enforced in equity without revival. (p. 422.)

3. JUDGMENT LIEN—*Enforcement of Lien in Equity—Jurisdiction*.

    When a suit in equity is brought in one county to enforce a judgment upon real estate in that county, and also on land in another county, jurisdiction as to the land in such other county is not lost because, on the facts, the court finds that the land in the county of the suit is not liable, but it may proceed against the land in that other county. (p. 423.)

Appeal from Circuit Court, Kanawha County.

Bill by James M. Laidley, administrator, and others, against William C. Reynolds and others. Decree for plaintiffs. Defendants appeal.

*Reversed and Dismissed.*

W. S. LAIDLEY, for appellants.

J. M. PAYNE and C. M. ALDERSON, for appellees.

BRANNON, PRESIDENT :

James M. Laidley recovered a judgment in 1874 in the county court of Kanawha county against William C. Reynolds. Laidley brought a chancery suit, 1896, in the circuit court of Kanawha county stating in his bill that by deed dated 25th January, 1892, Mary D. McClung and her husband had conveyed to Annie L. Reynolds, wife of William C. Reynolds, two lots of land in the town of Ruffner for the consid-

eration of $800, as recited in the deed; and that by deed dated 30th December, 1884, Julia Hopkins and others had conveyed to Annie L. Reynolds a tract of three hundred and forty acres of land lying in Boone county; and charging that William C. Reynolds had purchased and paid for both of said properties with his own money, and that his wife had paid none of the considerations therefor; and that Reynolds had procured the conveyances to be made to his wife with intent to defraud his creditors. Reynolds and wife filed answers denying all the charges of fraud, and pleading the statute of limitation of five years and *laches* in bar of the suit. The case was heard upon the bill, answers and depositions, and a decree was made exonerating the Ruffner lots from liability, but subjecting the Boone county land to sale to pay the judgment, and Reynolds and wife appealed because the decree subjected the Boone county land to sale, and the plaintiffs cross-assigned error because the decree did not hold the Ruffner lots liable to the judgment.

The plaintiff's bill is defective in failing to allege that Annie L. Reynolds had notice of the fraudulent intent of her husband in procuring the deeds to be made to her, according to the principles laid down in *Scraggs* v. *Hill*, 43 W. Va. 162, holding that, "A creditor cannot set aside a voluntary conveyance, after five years from the making thereof, without proof of actual fraud participated in by the parties to the transaction." The syllabus includes both parties as participating in the fraud to take it out of the statute. The opinion pointedly says so. The question depends upon the construction of sections 1 and 2, chapter 74, Code, and section 14, chapter 104. One construction is, that section 1, chapter 74, annuls a transfer made with intent to defraud creditors, whether voluntary or on valuable consideration, saving only purchasers for value without notice. Taken alone that section would avoid every fraudulent deed not on consideration valuable in law. The law (outside of section 14) is surely as laid down in Bump on Fraudulent Conveyances, section 239: "The validity of a voluntary conveyance depends upon the intent of the party making it, and not on the motive with which it is received. The proviso at the end of the statute only extends to transfers made upon a good consideration, and the only consideration which is good within the meaning

of the statute is a valuable consideration. It is the innocent purchaser and not the innocent donee that is protected. It is the motive of the giver and not the knowledge of the acceptor that is to determine the validity of the transfer. If any evidence of the grantee's participation in the fraudulent intent of the grantor were necessary, the mere acceptance of the transfer would be sufficient, for the law would presume such participation from this fact alone. A donee, who sets up a voluntary conveyance when it would, if established, defeat creditors, participates in and carries out the intent of the donor.'' To the same effect is Wait on Fraudulent Conveyances, §§ 200, 208. Thus, it matters not whether the grantee in a voluntary conveyance has or has not notice of the grantor's evil intent, because he has paid nothing, and the law gives preference to creditors over him for that reason. Section 1 is sweeping, since it declares all fraudulent transfers void, excepting only innocent purchasers. Grantees in voluntary conveyances are left under the sweep of the broad language of section 1. The fraud of the grantor alone taints the act, and his fraud is by law attributed to the grantee as if he had notice of it. He is in no better plight than the grantor, because he has paid nothing. *McCue* v. *McCue*, 41 W. Va. p. 156. Under this theory the first section deals only with certain transfers, namely, those infected with fraudulent intent, whether that intent is only in the mind of the grantor, or in the minds of both the grantor and grantee. Under this theory notice by the grantee of the grantor's fraudulent intent is immaterial, and therefore need not be alleged or proven. But those who contest this theory might answer with the question, What about section 14, chapter 104, saying: ''No gift, conveyance, assignment, transfer or charge, which is not on consideration deemed valuable in law, shall be avoided, either in whole or in part, for that cause only, unless within five years after it is made, suit be brought for that purpose?'' Those who advocate the construction just stated might respond to the question, that section 2, chapter 74, declares that ''Every transfer or charge which is not upon consideration deemed valuable in law shall be void as to creditors whose debts shall have been contracted at the time it was made.'' They may say that section 2 deals with a different class of transfers from those dealt with by section 1;

that section 2 brands as void only those transfers that are simply voluntary and condemns them only because voluntary; that it refers only to those transfers not tainted by fraudulent intent either in grantor or grantee, but those made in innocence on the part of both parties. They might say that section 1 has one office to perform, and section 2 a different office; the one condemns all fraudulent deeds including voluntary deeds, though the fraudulent intent move only the grantor; the other condemns deeds wholly free from fraudulent intent on the part of both parties. They might argue that when section 14 of chapter 104, gives the limitation to suits to set aside a transfer not on consideration deemed valuable in law, it means those transfers mentioned in section 2, chapter 74, and that this is shown not only by the description of the transfer as being, "not upon consideration deemed valuable in law" found in both sections, but also because section 14 declares that no conveyance "which is not on consideration deemed valuable in law shall be avoided  *  *  * *for that cause only*, unless within five years." Those words "for that cause only," that is, because on consideration not valuable, show that the limitation is intended to apply only to deeds avoided by the statute simply and only because voluntary. The other theory or construction is that section 1 applies to or includes a voluntary conveyance made with fraudulent intent on the part of the grantor, and that section 14 gives a limitation of five years protecting every voluntary conveyance, fraudulent or not fraudulent. It says that a transfer by a grantor intending fraud, where there is no valuable consideration, is just as much a voluntary conveyance as where both parties are innocent of fraud; and that this statute of limitation was meant to protect the innocent grantee, and him alone, and could not have been intended to protect the fraudulent grantor, because he has nothing to be protected. It says that it is this section 14 that rules, and operates to deny the application of the principles laid down in the quotation above from Bump. What difference whether there is or is not notice of fraud? Upon mature consideration I think the first construction is sound, and so think some other members of the Court; but *Scraggs* v. *Hill*, 43 W. Va. 162, has given a different construction to the statute, and this construction having stood for years without legislative inter-

vention we will adhere to it. *McCue* v. *McCue*, 41 W. Va. 151, holds the same as the Scraggs case. It admits on page 156 that the voluntary conveyance is, under section 2, conclusively fraudulent, whether the grantee had notice or not; that means for five years. After five years, the syllabus says, there must be fraud in fact, that is in both parties, because the opinion, page 159, says: "Unless notice of the debtor's actual fraudulent intent, if any, of his dishonest intention, or complicity therein, be in some way brought home to the wife, the creditor may no longer go against this land of the wife. The lawmakers give the creditor a plain and sure remedy, but upon the express condition that he brings his suit within five years before the grantee became a *quasi* purchaser for value." To hold otherwise than as we do, we must overrule both the Scraggs and McCue cases, which we hesitate to do, especially as the Court is divided three to two.

The argument is made that as the judgment creditor died after judgment, and it does not appear to have been revived in the name of his administrator, its lien has ceased. It is not necessary to hold that this is a lien for the purposes of this case. A general debt would do just as well. But very plainly a judgment lien on land does not cease to be such because of the death of its owner, because section 5, chapter 139, Code, makes it an absolute lien. The judgment is a lien by mere force of the statute. When once it fastens on the land it sticks to it notwithstanding the death of either party, and may be enforced in equity without revival, revival being necessary only for the purpose of issuing execution. The lien does not come from an execution. It is not a part of the action in which the judgment was rendered. It comes from the statute, and may be enforced always in equity under section 7. *Maxwell* v. *Leeson*, 50 W. Va. 361; *Burbridge* v. *Higgins*, 6 Grat. 120; *Taylor* v. *Spindel*, 2 *Id.* 44; *James* v. *Life*, 82 Va 702; Black on Judgments, section 467.

The point is made that when the circuit court found that the Ruffner lots were not liable, that instant the Kanawha circuit court lost jurisdiction and could not decree against the Boone land. This is rested on chapter 23, section 1, Code, saying that a suit to subject land to a debt must be brought in the county where the land is. Plainly there is nothing in this point. The bill proceeds against both tracts. They

both are parts of the subject matter of the suit, both enter into the jurisdiction, one being in Kanawha county, thus giving lawful jurisdiction in that county, and the fact that one property could not, because of want of evidence, be made liable did not oust the jurisdiction once acquired. Having jurisdiction for one purpose, the court gives full relief upon all matters of the suit. Besides, having jurisdiction it has power to sell land in any county by the letter of section 1, chapter 132, Code.

For the reason that the suit was not begun within five years after the deed for the Boone land and is barred as a suit to set aside a deed merely voluntary, we cannot hold it liable, for want of allegation and evidence of notice by Mrs. Reynolds of the alleged fraudulent intent of her husband. This prevents charging the land on the ground of actual fraudulent intent. As to the Ruffner lots upon the evidence we conclude that they were not purchased with the means of the husband.

We are asked to remand the case to allow amendment of the bill. To allow this it must appear from the proof that a case exists which, on a bill charging Mrs. Reynolds with knowledge or participation in the fraud, could be sustained. *Lamb* v. *Cecil*, 25 W. Va. 288. But the proof does not show that Mrs. Reynolds knew of her husband's indebtedness to the plaintiff; does not fix guilt upon her. We cannot guess that such evidence exists, so that upon amendment of the bill it would be sustained by evidence. We cannot remand to let the plaintiff hunt up new evidence.

Therefore, we reverse the decree and dismiss the bill.

*Reversed and Dismissed.*