M. L. RICH, APPELLEE, v. BERTHA COOPER ET AL.: IDAMA I. COOPER ET AL., APPELLANTS.

286 N. W. 383

FILED JUNE 16, 1939. No. 30596.

464

*Halligan, McIntosh & Halligan*, for appellants.

*Cook & Cook, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

CARTER, J.

This is an appeal from a decree of the district court for Dawson county foreclosing the lien of a judgment.

Plaintiff obtained a judgment against Richard J. Cooper in the county court of Dawson county on November 8, 1927, in the amount of $219.59 with interest and costs. On November 19, 1927, the judgment was transcripted to the office of the clerk of the district court for Dawson county and became a lien upon certain lands belonging to Cooper which were described in plaintiff's petition. On October 24, 1932, an execution was issued which was subsequently returned wholly unsatisfied. On December 2, 1934, Cooper died intestate and possessed of the real estate heretofore mentioned in addition to his homestead. A claim for the full amount of the judgment was filed in the county court on January 7, 1936. No proceedings to revive the judgment have been had. On October 7, 1937, a petition praying for the foreclosure of the lien of the judgment against the lands of the deceased other than his homestead was filed, said lands being particularly described therein. The decree of the district court foreclosing the judgment lien was entered on September 30, 1938. The record further discloses that the heirs at law of Richard J. Cooper, deceased, conveyed their interest in said lands to Emily L. Peden by warranty

deed recorded June 5, 1937. Due to the fact that a husband of one of the heirs refused to consummate the transaction, the property was deeded back to the heirs at law of Richard J. Cooper on June 10, 1937, by a quitclaim deed which does not appear to have been recorded.

It is the contention of the defendants that the judgment had become dormant and that the claims of creditors of the estate had attached as liens against the property of the estate during the dormancy of the judgment and were consequently superior to the judgment lien.

Defendants contend that the judgment became dormant upon the death of Richard J. Cooper, the judgment debtor. This contention is based upon the provisions of section 20-1413, Comp. St. 1929, which provides that an order to revive an action against the representatives or successor of a defendant shall not be made without the consent of such representatives or successor, unless in one year from the time it could have been first made. This section of the statute has been held to be nonexclusive and is not a bar to revivorship proceedings after one year by bill or supplemental petition. *Hayden v. Huff,* 62 Neb. 375, 87 N. W. 184; *Keith v. Bruder,* 77 Neb. 215, 109 N. W. 172. And in *School District v. Kountze Bros.,* 3 Neb. (Unof.) 690, 92 N. W. 597, the court said: "The limitation of one year for revivor of actions does not apply to proceedings to revive a dormant judgment."

It has generally been held that a valid execution cannot issue after the death of a party to a judgment without first reviving the judgment. But the lien of a judgment continues after the death of the judgment debtor, and may be enforced in equity without revival of the judgment. 16 Standard Ency. of Procedure, p. 413; 34 C. J. 659.

In *James v. Life,* 92 Va. 702, 24 S. E. 275, the court said: "A bill in equity may be maintained against the personal representative of a decedent and his devisees or heirs at law to subject the real estate of the decedent to the payment of a judgment recovered against him in his lifetime, without first reviving such judgment at law."

Also, in a similar case, the court, in *Laidley v. Reynolds,* 58 W. Va. 418, 52 S. E. 405, said: "The judgment is a lien by mere force of the statute. When once it fastens on the land it sticks to it notwithstanding the death of either party, and may be enforced in equity without revival, revival being necessary only for the purpose of issuing execution. The lien does not come from an execution. It is not a part of the action in which the judgment was rendered. It comes from the statute, and may be enforced always in equity."

Other cases to the same effect are *Morton v. Adams,* 124 Cal. 229, 56 Pac. 1038; *Maxwell v. Leeson,* 50 W. Va. 361, 40 S. E. 420; *Evans v. Silvey & Co.,* 144 Ala. 398, 42 So. 62.

It appears from the record in the instant case that the assets of the estate were not sufficient to pay plaintiff's claim. It also appears that the record title had been conveyed by the heirs at law of Richard J. Cooper at the time the suit before us was commenced. It would seem that plaintiff had no adequate remedy at law and that his petition for relief in a court of equity is sustainable. In a similar case, *Griswold v. Johnson,* 22 Mo. App. 466, the court said: "Where a judgment was rendered and a transcript of it filed before the sale of land by the judgment debtor to a third person, it is a lien upon the *property* and *it* is liable for the amount thereof. Before resorting to means for the enforcement of the lien, in a case where the judgment debtor is dead, the judgment creditor must have exhausted his legal remedies, as, for instance, by showing an allowance of his claim in the probate court against the estate of the judgment debtor; except where it would have been useless; as where it is admitted, as in this case, that the judgment debtor died leaving no estate whatever, of any kind or description. Since the *lien* cannot be enforced in the probate court, and the judgment debtor being dead no execution can issue; a court of equity has jurisdiction to enforce the lien of the judgment."

The record shows that the last execution on the judgment in question was issued on October 24, 1932. Under the provisions of our statute on the subject, the judgment would not

become dormant until five years from that date. Comp. St. 1929, sec. 20-1515. The petition for the foreclosure of the judgment lien was filed on October 7, 1937, but the decree was not entered until after the five-year period had elapsed. That a suit in equity was an available remedy for the foreclosure of the judgment lien at any time before the judgment became dormant without a revivor is established by the authorities. But in the case at bar the judgment had become dormant and the lien lost when the decree was taken. There was nothing left upon which a decree could be predicated. The applicable rule can best be stated by quoting from the opinion in *Flagg v. Flagg*, 39 Neb. 229, 58 N. W. 109, wherein the court said:

"Judgments are liens only by force of statute. A judgment of the district court in this state is a lien upon the real estate of the debtor within the county, from the first day of the term of court at which it was entered; and such lien remains in force for five years from the date of the judgment. In order to continue the lien beyond this period the statute, in express terms, requires that an execution must be issued within the life of the judgment. The issuance of an execution within five years prolongs the judgment and preserves the lien of the judgment for five years longer. The bringing of this action was not equivalent to, nor did it take the place of, the issuing of executions upon the judgments. The pendency of this suit did not prevent plaintiff from suing out executions. *See Bish v. Burns, supra.*

"*Newell v. Dart,* 28 Minn. 248, is analogous to the case at bar. That was an action in the nature of a creditor's bill to subject property of the judgment debtor to the payment of a judgment recovered against him. By the statute of Minnesota, a judgment recovered in that state survives, and the lien thereof continues, for the period of ten years, and no longer. There the action was brought within that period; but before a decree was rendered therein, plaintiff's judgment, which by the suit he was seeking to enforce, became dormant. It was contended in that case, as here, that the pendency of the action had the effect to keep alive the

judgment. The court held that the commencement of the suit before the judgment was barred, and the pendency thereof afterwards did not operate to continue the judgment in force beyond the statutory period.

"It is argued that the action may be treated as one to recover on the various judgments held by plaintiff, and as they were in full force when this suit was commenced, the statute of limitations ceased to run at the date of the summons which was served on the defendants. In no proper sense can this be regarded as a suit at law to recover a judgment upon plaintiff's judgments. It is merely an equitable action brought to foreclose a mortgage, and for the marshaling of liens upon the mortgaged premises. But if we regard this as an action at law upon domestic judgments, plaintiff would stand in no better position. The commencement of the action would prevent the running of the statute of limitations against the causes of action,—the judgments, —but it would not preserve the liens of the judgments after they became dormant. Had a new judgment been obtained by plaintiff, such judgment would have been a lien only from the first day of the term of court, which would have been subsequent to the recording of Conkling's mortgage; hence, the mortgage would have been the prior lien. Our conclusion is that plaintiff's judgment became barred and ceased to be a lien as against Conkling's mortgage, notwithstanding the pendency of this action." See, also, *Newell v. Dart,* 28 Minn. 248, 9 N. W. 732; *Cotton v. First Nat. Bank of Superior,* 51 Neb. 751, 71 N. W. 711; *Predohl v. O'Sullivan,* 59 Neb. 311, 80 N. W. 903.

Under these holdings plaintiff's judgment became dormant during the pendency of the action and before decree was entered. On becoming dormant it ceased to operate as a lien upon the estate of the judgment debtor. There was nothing remaining therefore to support a decree of foreclosure of the judgment lien.

REVERSED.