*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 11**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BRUCE GILDEA,
*Appellant,*

*v.*

WELLS FARGO BANK, N.A., a National Association;
BARBARA MILES; CLASSIC CABINETS, INC.,
*Appellees.*

No. 20120999
Filed January 27, 2015

Fourth District, American Fork
The Honorable Thomas Low
No. 120100177

Attorneys:

P. Bryan Fishburn, Salt Lake City, for appellant

Joseph Skinner, Salt Lake City, for appellee
Wells Fargo Bank, N.A.

Chris Schmutz, Bountiful, for appellees Barbara Miles
and Classic Cabinets, Inc.

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1 We are asked to determine whether filing an action to foreclose a judgment lien tolls the expiration of the underlying judgment. Appellant Bruce Gildea filed an action against Wells Fargo Bank, N.A., seeking to foreclose his judgment lien against property owned by Wells Fargo. While the foreclosure action was pending, the judgment lien expired and the district court dismissed the action. In requesting that we reverse the district court, Mr. Gildea asks us to either overturn our precedent holding that a foreclosure action does not toll the expiration of a judgment or hold that Wells Fargo should be estopped from asserting the expiration of the

judgment. Mr. Gildea also argues that the district court erred in dismissing his claim of wrongful interference with property rights against appellees Barbara Miles and Classic Cabinets, Inc.

¶2   We affirm the district court's dismissal of Mr. Gildea's foreclosure action. In many statute-of-limitations contexts, the filing of an action within the statutory period is sufficient to preserve the underlying claim. However, the Legislature has set a clear expiration period for a judgment, which is different from a statute of limitations, and has provided a mechanism for renewing judgments. Because Mr. Gildea failed to avail himself of this mechanism, the district court correctly dismissed his foreclosure action. We also affirm the district court's dismissal of Mr. Gildea's claim against Classic Cabinets[1] because that claim is legally insufficient.

## BACKGROUND

¶3   We affirm a district court's dismissal of an action under rule 12(b)(6) of the Utah Rules of Civil Procedure only when the plaintiff has not alleged, or cannot prove, facts sufficient for relief. *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275. We therefore take the facts alleged in Mr. Gildea's compliant and view them in the light most favorable to his claims.

¶4   Classic Cabinets obtained a judgment in the amount of $11,069.25 plus 24 percent interest per annum against Russell/Packard Development and Lawrence Russell (collectively, R/P Development) on July 28, 2004. Classic Cabinets recorded the judgment, thereby obtaining a judgment lien against all property owned by R/P Development, including Marina Village Lot 11. For about one and a half years, R/P Development made payments to Classic Cabinets, reducing the amount due on the judgment to

---

[1] On February 6, 2013, appellee Barbara Miles filed for chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Utah, Central Division. Pursuant to the automatic stay provisions of 11 U.S.C. § 362(a), this appeal is stayed as to all claims pending against Ms. Miles until the conclusion of her bankruptcy proceedings. We therefore resolve only those claims against Wells Fargo and Classic Cabinets. *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) (explaining that the automatic stay provision under the bankruptcy code "stays litigation only against the debtor, and affords no protection to solvent co-defendants").

$3,457.06. Classic Cabinets subsequently sold all of its remaining rights under the judgment to Mr. Gildea for $1,500. R/P Development stopped paying on the judgment after Classic Cabinets sold it to Mr. Gildea. Mr. Gildea took no action to satisfy the judgment for over five years.

¶5    On August 16, 2006, Wells Fargo obtained its own judgment against R/P Development for $300,257.27. Five months later, Wells Fargo purchased Marina Village Lot 11 at a sheriff's sale conducted pursuant to a writ of execution. Because Mr. Gildea's judgment lien was senior to that of Wells Fargo, Wells Fargo acquired the lot subject to Mr. Gildea's lien.

¶6    Approximately four years after purchasing Marina Village Lot 11, Wells Fargo sought and obtained from Classic Cabinets a satisfaction of the judgment that Classic Cabinets had previously sold to Mr. Gildea. Mr. Gildea alleges, and Wells Fargo stipulates, that the satisfaction was invalid because, at the time it was entered, Classic Cabinets no longer owned the judgment.

¶7    On April 16, 2012, approximately three months before his judgment was due to expire, Mr. Gildea filed an action against Wells Fargo seeking to foreclose the lien on Marina Village Lot 11. Wells Fargo filed a timely answer to Mr. Gildea's complaint, in which it alleged several defenses and counterclaims. Mr. Gildea responded to the counterclaims and amended his complaint to assert claims against Classic Cabinets and Ms. Miles based on the invalid satisfaction of judgment they had provided to Wells Fargo.[2]

¶8    On August 28, 2012, Wells Fargo filed a motion to dismiss Mr. Gildea's complaint pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. Wells Fargo argued that the judgment had expired on July 28, 2012—eight years after the date of its entry. Wells Fargo further alleged that because a foreclosure action does not renew or extend a judgment, Mr. Gildea could no longer foreclose his lien on Marina Village Lot 11, which had expired along with the judgment. Classic Cabinets and Ms. Miles subsequently joined Wells

---

[2] In their answer to Mr. Gildea's amended complaint, Classic Cabinets and Ms. Miles admitted that they had lacked authority to execute the satisfaction of judgment but denied that they had knowledge that Classic Cabinets had sold the judgment to Mr. Gildea. They further admitted that the satisfaction of judgment was without legal effect and was therefore null and void.

Fargo in its motion to dismiss, arguing that all claims against them should likewise be dismissed. Mr. Gildea opposed the motion, arguing that filing the foreclosure action extended the duration of the judgment and related lien. The district court granted Wells Fargo's motion. Relying on the plain language of Utah Code section 78B-5-202 and our precedent interpreting that statute, the district court ruled that Mr. Gildea's "filing of the foreclosure action . . . did not extend the duration of the underlying judgment" and that the underlying judgment and lien thus expired on July 28, 2012. Mr. Gildea filed a timely notice of appeal. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶9    "We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275.

## ANALYSIS

¶10 Mr. Gildea appeals the district court's dismissal of his foreclosure action. Mr. Gildea argues that filing the foreclosure action within the eight-year duration of the judgment should have tolled its expiration. In so arguing, Mr. Gildea asks us to overturn *Federal Farm Mortgage Corporation v. Walker*, in which we held that filing a foreclosure action does not extend the duration of a judgment. 206 P.2d 146, 147–48 (Utah 1949). Mr. Gildea argues that our holding in that case "encourages defendants to stall and engage in dilatory conduct in order to allow the judgment associated with the lien to expire."

¶11 Mr. Gildea alternatively argues that the district court erred because it was inequitable to dismiss his suit. Specifically, Mr. Gildea reasons that a foreclosure action was his only means of enforcing the lien and therefore the filing of the action should have tolled its expiration. He further asserts that Wells Fargo should be estopped from raising the expiration of the judgment because, by asserting unmeritorious defenses and counterclaims in its answer to Mr. Gildea's complaint, Wells Fargo unfairly extended the foreclosure litigation past the judgment's expiration. Finally, Mr. Gildea asserts that the district court erred in dismissing his suit without considering his cause of action against Classic Cabinets and Ms. Miles for wrongful interference with property. We discuss each argument in turn.

## I. FILING A FORECLOSURE ACTION DOES NOT TOLL THE EXPIRATION OF A JUDGMENT

¶12 Judgment liens are creatures of statute without any basis in the common law. *Cox Corp. v. Vertin*, 754 P.2d 938, 939 (Utah 1988). The rights of the parties to a judgment lien must therefore "be determined within the statutory framework." *Id.* The relevant statutory framework arises from three sections of the Utah Code. First, Utah's judgment statute provides that "[j]udgments shall continue for eight years from the date of entry in a court unless previously satisfied or unless enforcement of the judgment is stayed in accordance with law." UTAH CODE § 78B-5-202(1). A judgment "becomes a lien upon real property if" the judgment or other verifying documentation "is recorded in the office of the county recorder." *Id.* § 78B-5-202(7). Second, the Renewal of Judgment Act provides the procedure whereby a judgment creditor may renew a judgment for an additional eight years beyond the judgment's original duration. *Id.* § 78B-6-1802. Once the judgment is renewed, the creditor may then "renew . . . a lien created by a judgment" by filing the appropriate documentation in the county recorder's office. *Id.* § 78B-5-202(9).

¶13 Third, the Utah Code establishes an eight-year statute of limitations for an action "upon a judgment or decree of any court of the United States, or of any state or territory within the United States." *Id.* § 78B-2-311. Thus, the relevant statutory framework provides for two different, but concurrent, eight-year time frames: (1) an eight-year duration for a judgment, plus eight additional years if renewed, and (2) an eight-year statute of limitations for filing an action upon a judgment.

¶14 In this case, Mr. Gildea filed his foreclosure action within the eight-year statute of limitations, thus the foreclosure action was timely when filed. But the foreclosure action did not conclude within the eight-year duration of the judgment, and Mr. Gildea did not seek to renew it. The issue thus presented is whether a timely-filed action to foreclose a judgment lien prevents the underlying judgment from expiring if it reaches the end of its eight-year duration during the pendency of the foreclosure action.

¶15 The district court held that filing a judgment lien foreclosure action does not extend the duration of the underlying judgment. The court explained that "[w]hile the statute of limitations [set forth in Utah Code section 78B-2-311] establishes the deadline for *commencing* enforcement proceedings, [section] 78B-5-202(1)

effectively establishes the deadline for *concluding* them. There is no authority to support [Mr. Gildea's] position that meeting the one extends the other." The district court therefore held that Mr. Gildea's judgment expired because although Mr. Gildea had "eight years to commence this action, . . . the judgment itself—unless renewed—also expired after eight years."

¶16  In dismissing Mr. Gildea's foreclosure action, the district court relied on our precedent in *Federal Farm Mortgage Corporation v. Walker*, 206 P.2d 146 (Utah 1949). In that case, Federal Farm Mortgage Corporation (FFMC) obtained a judgment and a lien against Walker. *Id.* at 146. Nearly eight years later, FFMC commenced an action to foreclose its judgment lien. *Id.* During the pendency of the action, FFMC's judgment expired, but the district court nevertheless entered a decree of foreclosure against Walker's estate. *Id.* at 147. On appeal, we reversed the decree, holding that "the lien of a judgment expires at the end of the statutory period established by the legislature and . . . the courts are powerless to extend it beyond that time." *Id.* We concluded that "since [FFMC's] lien expired while this action was pending in the district court," the property at issue was "free of any lien arising by virtue of [FFMC's] judgment." *Id.* at 148.

¶17  Mr. Gildea argues that we should overturn *Federal Farm Mortgage* and hold that the filing of a foreclosure action before the expiration of the judgment will prevent the judgment from expiring. Parties asking us to overturn precedent have "a substantial burden of persuasion." *Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, ¶ 16, 275 P.3d 208 (internal quotation marks omitted). They must clearly and convincingly demonstrate that the precedent "was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." *Id.* (internal quotation marks omitted); *see also ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2010 UT 65, ¶ 23, 245 P.3d 184 ("[L]ong standing precedent should not be overruled except for the most compelling reasons." (internal quotation marks omitted)).

¶18  Mr. Gildea has not satisfied this heavy burden. Indeed, he does not even acknowledge the requirements we have set forth for overturning precedent. He does, however, present two policy-based reasons for overturning *Federal Farm Mortgage*. First, Mr. Gildea asserts that we should overturn *Federal Farm Mortgage* because it "denies persons in [his] position any reasonable opportunity to

enforce a lien they have." But Mr. Gildea provides no support for this assertion. And our holding in *Federal Farm Mortgage* does not prevent individuals in Mr. Gildea's position from taking action to enforce a lien well before its expiration. *Federal Farm Mortgage* stands only for the proposition that filing a foreclosure action does not prevent a judgment from expiring. In this case, Mr. Gildea had over five years to enforce his judgment but took no action until just months before it expired. Our holding in *Federal Farm Mortgage* did not prevent him from filing a foreclosure action well before the judgment was set to expire. Rather, it should have alerted him to the necessity of taking timely action.

¶19 Mr. Gildea next argues that we should overturn *Federal Farm Mortgage* because it encourages parties to drag out litigation while waiting for the lien holder's judgment to expire. But we need not overturn *Federal Farm Mortgage* to prevent such dilatory behavior because of the exception we carved out in *Free v. Farnworth*, 188 P.2d 731, 734–35 (Utah 1948). In that case, we held that a judgment debtor cannot assert a judgment's expiration as a defense in an enforcement action when the debtor acted in bad faith to prevent the judgment creditor from enforcing the judgment. *Id.; see also Fed. Farm Mortg. Corp.*, 206 P.2d at 147 ("The *Free* decision is grounded upon the equitable principle that no one should be allowed to profit from his own wrong."). The *Free* exception prevents parties from engaging in bad-faith, dilatory behavior to force a judgment into expiration.[3] We need not overturn *Federal Farm Mortgage* to achieve the same result.

¶20 Overturning *Federal Farm Mortgage* would result in a judicial override of clear statutory language setting an eight-year duration of a judgment. And, as explained below, the Legislature has explicitly provided a mechanism for renewing judgments. We therefore see no reason to create a different judicial mechanism—the filing of a foreclosure action—to fulfill the same purpose. To do so would be contrary to the plain language of our statute.

¶21 Moreover, we find significant support for upholding *Federal Farm Mortgage*. Without an encumbrance expiration, the passage of time cannot clear a clouded title. And without clear title, bona fide purchasers are left vulnerable and property rights are mired in needless litigation. Overturning *Federal Farm Mortgage* could result

---

[3] Indeed, Mr. Gildea asks us to apply this exception here, but we decline to do so for the reasons discussed below.

in land remaining encumbered beyond the statutory time frame, thereby prolonging the burden on the purchase and sale of real property.

¶22 Finally, our holding in *Federal Farm Mortgage* aligns with the majority of states, which agree that "unless the time for the duration of the lien has been extended, the lien ceases to exist after the lapse of the statutory period, [even if] the duration of the lien is fixed at a period much shorter than that barring action on the judgment itself." 50 C.J.S. *Judgments* § 815 (2009) (footnotes omitted).[4] In support of his contrary position, Mr. Gildea cites only to Texas case law and a single property treatise—which also cites only to Texas law—to support his argument that the filing of a foreclosure action "has the effect of prolonging the duration of the lien." 5 POWELL ON REAL PROPERTY § 38.08[1] (2014) (citing *Churchill v. Russey*, 692 S.W.2d 596 (Tex. App. 1985)). But the Texas statute explicitly provides that "an action of debt" may revive a dormant judgment if brought "not later than the second anniversary of the date that the judgment becomes dormant." TEX. CIV. PRAC. & REM. CODE ANN. § 31.006 (2014).[5]

---

[4] *See also Great W. Exch., Inc. v. Walters*, 819 P.2d 1093, 1095 (Colo. App. 1991) (noting that the Colorado legislature "has neither explicitly nor implicitly referred to an extension of the lien period through the securing of a writ of execution and filing of a certificate of levy," and therefore holding that a judgment could expire during the pendency of an action for a writ of execution); *Tenney v. Hemenway*, 53 Ill. 97, 103 (Ill. 1869) (holding that "the levy of the execution in this case did not have the effect of prolonging the lien of the judgment beyond the period limited by the statute"); *Newell v. Dart*, 9 N.W. 732, 733 (Minn. 1881) (holding that a creditor's action during a judgment's life "neither creates a new lien nor extends the judgment lien"); *Rich v. Cooper*, 286 N.W. 383, 386 (Neb. 1939) (declaring that "the plaintiff's judgment became barred, and ceased to be a lien . . . notwithstanding the pendency of [an] action"); *Lupton v. Edmundson*, 16 S.E.2d 840, 841 (N.C. 1941) (explaining that an action on a judgment "does not have the effect of prolonging the statutory life of the lien").

[5] Arizona law is similar to the law in Texas. *See* ARIZ. REV. STAT. § 12-1611 (2014). But adding another statutory framework to the Texas side of the ledger adds no extra weight to Mr. Gildea's position because the Texas rule is based on a statutory scheme that

(continued...)

¶23 Unlike the Texas statute, there is nothing in the Utah Code to support the proposition that filing a foreclosure action tolls the expiration of the underlying judgment. Instead, the Legislature provided a different mechanism—filing a motion to renew judgment—whereby a judgment creditor can prevent his judgment from expiring during the pendency of a foreclosure action. UTAH CODE § 78B-6-1802. We will not disrupt clear statutory language and over sixty years of precedent. Thus, we hold that filing a judgment lien foreclosure action does not prevent the expiration of the underlying judgment.

## II. PRINCIPLES OF EQUITY DO NOT SUPPORT TOLLING THE EXPIRATION OF GILDEA'S JUDGMENT

¶24 Mr. Gildea alternatively argues that we should invoke our equitable power to extend his judgment. He first argues that it would be inequitable to allow the judgment to expire in his case because a foreclosure action was his only means of enforcing it. Second, he argues that Wells Fargo should be estopped from asserting the expiration of the judgment because, by alleging unmeritorious counterclaims and defenses, Wells Fargo assured that the judgment would expire before the foreclosure litigation could be concluded. We address each argument in turn.

### A. Filing a Foreclosure Action Was Not Mr. Gildea's Only Option and Would Not Justify Tolling the Judgment's Expiration in Any Event

¶25 A judgment creditor may enforce his judgment through a writ of execution or a foreclosure action. *Capital Assets Fin. Servs. v. Maxwell*, 2000 UT 9, ¶ 15, 994 P.2d 201 ("Once a judgment lien attaches, a judgment creditor may levy execution on the property or foreclose on the lien . . . ."). Mr. Gildea argues that a writ of execution was not available to him and therefore foreclosing on the lien was his only enforcement option. Specifically, he relies on rule 64E(a) of the Utah Rules of Civil Procedure, which provides that "[a] writ of execution is available to seize property in the possession or under the control of the *defendant* following entry of a final judgment." (Emphasis added). And because rule 64(a)(2) defines "defendant" as "the party against whom a claim is filed or against whom judgment has been entered," Mr. Gildea argues that R/P Development, not Wells Fargo, is the defendant. Mr. Gildea

---

[5](...continued)
differs significantly from Utah's.

therefore contends that he could not have executed on Marina Village Lot 11 once it became the property of Wells Fargo. But Mr. Gildea ignores rule 64(e)(1), which explains that "[a]ny person claiming an interest in the property has the same rights and obligations as the defendant with respect to the writ." Because Wells Fargo claimed an interest in the property, it assumed the same obligations with respect to a writ of execution as R/P Development. Thus, Mr. Gildea could have levied execution on the lot.

¶26 Moreover, even if it were true that a foreclosure action was Mr. Gildea's only option, Mr. Gildea fails to explain how that supports his equitable argument. Had foreclosure been Mr. Gildea's only option, he should have been all the more motivated to either renew the judgment or file his foreclosure action well before the judgment's expiration.

¶27 Mr. Gildea also alleges that renewing the judgment was not an option for him because renewing the judgment would have resulted in a new judgment against R/P Development, and any liens acquired pursuant to the new judgment would have attached only to property now owned by R/P Development. Because Wells Fargo, not R/P Development, owns Marina Village Lot 11, Mr. Gildea reasons that he would have lost his lien on the lot had he renewed the judgment. In so arguing, Mr. Gildea relies on *Cox Corp. v. Vertin*, 754 P.2d 938, 939 (Utah 1988), and *Free v. Farnworth*, 188 P.2d 731, 734–35 (Utah 1948). In *Cox*, we discussed the effect of renewing a judgment. 754 P.2d at 938. At that time, Utah's judgment lien statute did not "authorize the renewal of a judgment subject to limitations or restrictions imposed on it." *Id.* at 939. We therefore held that "[t]he lien of a renewal judgment attaches only from the date of entry of the new judgment and does not relate back to the date of the original judgment or extend the prior lien." *Id.* (citing *Free*, 188 P.2d at 731). In other words, "[a] renewal of a judgment results in a new judgment which . . . creates a new lien upon all the real property of the judgment debtor." *Id.* (internal quotation marks omitted).

¶28 Our holdings in *Cox* and *Free* are consistent with Mr. Gildea's assertions that a renewal of the judgment would have created an entirely new judgment against R/P Development. Thus, any subsequent judgment lien would attach to property owned by R/P Development, not Wells Fargo. But Mr. Gildea fails to acknowledge that the Legislature changed the process for renewing judgments in 2011 when it enacted the Renewal of Judgment Act

(the Act). At the time of *Cox*, a party seeking to renew a judgment did so by filing a completely new action in the district court. *See Cox*, 754 P.2d at 939; *see also Renewal of Judgment Act: Hearing on HB10 Before the House Judiciary Standing Committee*, General Session (2011) (statement of Kirk Cullimore, bill drafter and attorney) (explaining that, prior to the Renewal of Judgment Act, parties seeking to renew a judgment did so by filing a completely new action). And it was this renewal procedure that gave rise to our holdings in *Cox* and *Free*. Because renewing a judgment required the filing of a new action, it made sense that any judgments rendered in the new action would result in a new judgment and new liens. But the Renewal of Judgment Act completely changed the landscape by creating a new mechanism for renewing a judgment. Parties seeking to renew a judgment now do so by filing "a motion . . . *within the original action*" in which the judgment was first obtained. UTAH CODE § 78B-6-1802 (emphasis added). Because renewing a judgment no longer requires the filing of a new action, our *Cox* and *Free* decisions are no longer consistent with the statutory framework. Indeed, the Act explains that if a district court grants a motion to renew a judgment, the district court's order serves to "renew[] the original judgment" for the same amount of time as the original judgment. *Id.* § 78B-6-1804. And because a renewed judgment relates back to and extends the life of the original judgment, a renewed lien likewise relates back to the original lien. Thus, when a judgment creditor renews his judgment and follows the proper procedure for renewing the associated liens, *see id.* § 78B-5-202(9)(a), the original liens will be extended for an additional eight years.

¶29 The Renewal of Judgment Act is consistent with the renewal mechanism in several other states.[6] The Act also brings Utah's

---

[6] *See, e.g.*, N.D. CENT. CODE § 28-20-23 (2014) (stating that renewed judgments operate "under the same conditions and with the same force and effect within such renewal period as upon a judgment originally rendered and entered at the date of such renewal"); S.D. CODIFIED LAWS § 15-16-35 (2014) ("An execution may issue upon the judgment as renewed under the same conditions and with the same force and effect within such renewal period as upon the judgment originally rendered . . . ."); *Jonathan Neil & Assocs., Inc. v. Jones*, 42 Cal. Rptr. 3d 350, 356 (Ct. App. 2006) ("[R]enewal does not create a new judgment or modify the present judgment. Renewal merely

(continued...)

judgment renewal procedure more in line with states that follow a dormancy/revival judgment system. In those states, a judgment becomes dormant if the judgment creditor takes no action on the judgment within a statutorily prescribed time frame. 46 AM. JUR. 2D. *Judgments* § 385 (2006). The statutes of these states also provide mechanisms for reviving a dormant judgment. Under the judgment revival mechanism, parties who revive their judgment do not receive a new judgment, but instead bring life back to their original judgment.[7]

¶30 We therefore hold that under the Renewal of Judgment Act, renewing a judgment gives new life to a party's original judgment. And we acknowledge that our holdings in *Cox* and *Free* have been statutorily overruled. Mr. Gildea is therefore incorrect in arguing that renewing the judgment would have resulted in a new judgment and new liens. And even had the Legislature not passed the Renewal of Judgment Act, we could not find an equitable justification for allowing Mr. Gildea to foreclose a lien arising from an expired judgment. Since renewing the judgment would not have renewed the lien on Marina Village Lot 11 under prior law, Mr. Gildea should have either pursued a writ of execution or a foreclosure action well before the judgment's expiration. Because Mr. Gildea did not enforce the judgment for over five years, we see no equitable reason for holding that his filing of a foreclosure action on the eleventh hour of the judgment's life should extend its duration.

### B. Wells Fargo Is Not Estopped from Asserting the Judgment's Expiration

¶31 Mr. Gildea next argues that Wells Fargo should be estopped from raising the judgment's expiration because it extended the foreclosure litigation until the judgment expired. Specifically, Mr. Gildea claims that Wells Fargo acted in bad faith by including

---

[6](...continued) extends the enforceability of the judgment.").

[7] *See* GA. CODE ANN. 9-12-62 (2014) ("[R]eviv[ing] a judgment is not an original action but is the continuation of the action in which the judgment was obtained."); *Eatman v. Goodson*, 58 So. 2d 129, 131 (Ala. Ct. App. 1951) (explaining that "to revive a judgment is not to seek a new judgment for debt, but . . . to revitalize a dormant judgment so as to enable the creditor to enforce by execution the judgment he has already obtained").

defenses and counterclaims in its answer to Mr. Gildea's complaint, which forced Mr. Gildea to file an amended complaint after the judgment expired.

¶32 As explained above, under our holding in *Free*, a judgment debtor cannot assert a judgment's expiration as a defense when the debtor acts in bad faith to prevent the judgment creditor from enforcing the judgment. 188 P.2d at 734–35. This principle is predicated upon the theory that once a party seeks equitable relief, it consents to an equitable—even though undesired—result. *Id.* at 735.

¶33 More recently, in *Sittner v. Schriever*, the court of appeals relied on this principle to hold that where erroneous adverse rulings prevent a judgment creditor from enforcing his judgment, the expiration of the judgment can be tolled. 2001 UT App 99, ¶ 17, 22 P.3d 784. In *Sittner*, the district court and bankruptcy court collectively made three adverse decisions against the judgment creditor that rendered enforcement of the judgment impossible. *Id.* ¶¶ 4–5. Because all three decisions were later reversed, and because those erroneous decisions had prevented the judgment creditor from enforcing the judgment before it expired, the court of appeals held that the time it took to appeal and resolve the erroneous decisions did not count against the judgment's eight-year duration. *Id.* ¶ 17.

¶34 Mr. Gildea argues that Wells Fargo should likewise be estopped from asserting the expiration of the judgment because, by including defenses and counterclaims in its answer to the foreclosure action, Wells Fargo prevented Mr. Gildea from enforcing his judgment before it expired. But Mr. Gildea's situation is distinguishable from *Sittner* and *Free*, because Wells Fargo's answer to Mr. Gildea's foreclosure action did not prevent Mr. Gildea from enforcing the judgment. Wells Fargo filed its answer in a timely fashion, and Mr. Gildea fails to explain how Wells Fargo acted in bad faith by including defenses and counterclaims in its answer. Mr. Gildea has not shown how Wells Fargo's answer was anything other than a valid response to his complaint. We conclude that this case is more like *Federal Farm Mortgage* because Mr. Gildea's action to enforce the judgment "before the lien expired was not made impossible nor rendered fruitless by any wrongful or misleading act or conduct of the defendants." 206 P.2d 146, 147–48 (Utah 1949). Thus, we find no principle of equity under which the judgment

should be extended past July 28, 2012.[8]

## III. THE DISTRICT COURT CORRECTLY DISMISSED GILDEA'S CLAIM AGAINST CLASSIC CABINETS

¶35  Mr. Gildea argues that even if the district court correctly dismissed his foreclosure action against Wells Fargo, it erred in dismissing the entire case without considering his claim against Classic Cabinets. In answer to Mr. Gildea's original complaint, Wells Fargo asserted that the judgment was satisfied and produced a satisfaction of judgment signed by Classic Cabinets. Mr. Gildea then amended his complaint, alleging that Classic Cabinets wrongfully interfered with the judgment when it signed the satisfaction of judgment after having sold it to Mr. Gildea. Classic Cabinets responds that Mr. Gildea did not preserve this issue in the district court. We hold that the issue was preserved, but we are not persuaded that the district court erred.

¶36  "We generally will not consider an issue unless it has been preserved" in the court below. *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. Preservation turns on whether the district court "has an opportunity to rule on [an] issue." *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted). In this case, Classic Cabinets raised the sufficiency of the claim against it and the district court ruled on the issue.

¶37  Classic Cabinets "join[ed] in the Motion to Dismiss filed . . . by Defendant Wells Fargo." In support of its motion, it argued that

> [s]ince the judgment has expired by operation of law, the property at issue in this case belongs to Wells Fargo Bank free and clear of any claim by [Mr. Gildea], and since [he] has no claim upon the property, [he] has no claim against [Classic Cabinets] for alleged loss of the value of the property.

This argument was adequate to raise for the district court the sufficiency of the claim against Classic Cabinets. And the district court, in fact, thereafter ruled in favor of Classic Cabinets.

---

[8] It is an unfortunate reality of our litigation system that, absent a default by defendants, Mr. Gildea was extremely unlikely to obtain a final judgment in his foreclosure action in fewer than three months—he filed his case on April 16, 2012, and the judgment expired on July 28, 2012.

¶38 Having concluded that the matter was preserved, we turn to the merits. We conclude that the district court correctly dismissed Mr. Gildea's claim against Classic Cabinets. Classic Cabinets' argument was that Mr. Gildea's claim was legally insufficient because the judgment had expired. After all, Classic Cabinets could not interfere with an expired judgment. And Mr. Gildea never contradicted this argument. Indeed, he could not. In his amended complaint, Mr. Gildea had asked the district court to "enter judgment in [his] favor against Classic Cabinets . . . *in the full amount which [he] would be entitled to recover under the Classic Cabinets judgment,* but for . . . Classic Cabinets' wrongful interference with his right to recover under that judgment." (Emphasis added). In short, Mr. Gildea's claim against Classic Cabinets was admittedly dependent upon the value of the judgment. And at the time Mr. Gildea filed his claim against Classic Cabinets, the judgment was worthless because it had expired. Thus, we affirm the district court because the expiration of Mr. Gildea's judgment rendered his claim against Classic Cabinets legally insufficient.

## CONCLUSION

¶39 Mr. Gildea's filing of a foreclosure action on his judgment lien did not toll the expiration of the underlying judgment. Because the judgment expired during the pendency of the foreclosure action, the district court correctly dismissed the action. We therefore affirm the district court's dismissal of Mr. Gildea's foreclosure action and his claim against Classic Cabinets.