2020 UT App 48

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROBERT LYNN SORBONNE,
Appellant.

Opinion
No. 20190013-CA
Filed March 26, 2020

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 181800213

Laura J. Fuller, Attorney for Appellant

Stephen D. Foote, Grant H. Charles, and W. Anthony
Wilcox, Attorneys for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN FORSTER concurred. JUDGE MICHELE M.
CHRISTIANSEN FORSTER filed a concurring opinion, in which
JUDGE GREGORY K. ORME joined in part. JUDGE GREGORY K. ORME
filed a dissenting opinion.

HAGEN, Judge:

¶1     Following a heated argument with his father, nineteen-year-old Robert Lynn Sorbonne got into a car with his younger sister and drove away from their father's property. Shortly thereafter, the father chased them down in his own vehicle and cut them off on the road, forcing them to stop. When the father exited his vehicle and attempted to approach Sorbonne's car, Sorbonne pointed a gun at his father and threatened to kill him. Based on that event, the State charged Sorbonne with one count of threatening with or using a dangerous weapon in a fight or quarrel, a class A misdemeanor. At his bench trial, Sorbonne

claimed self-defense, arguing that his father had a history of violence and that Sorbonne reasonably feared for his and his sister's safety when he pulled the gun. The district court found Sorbonne guilty.

¶2 On appeal, Sorbonne contends that his conviction should be reversed because the district court erred by (1) applying the self-defense standard for "using force intended or likely to cause death or serious bodily injury" rather than the standard for "threatening or using" non-deadly force, (2) excluding evidence of the father's prior violent and abusive acts, and (3) misapplying the reasonableness standard contained in Utah's self-defense statute. We reject his arguments and affirm.

BACKGROUND[1]

*The Prosecution's Version of Events*

¶3 Sorbonne's family was "under a lot of stress" on the morning of June 20, 2018, as a result of his mother leaving his father and requesting a divorce the previous night. After Sorbonne woke up, he asked his father where his mother was. When his father told him that she "left and wanted a divorce," a heated argument ensued. They began yelling at each other, and Sorbonne blamed his father for "screw[ing] up" and causing his mother to leave. Sorbonne was also angry because they had "done so much work on the[ir] ranch and [they] all wanted to

---

1. Sorbonne appeals his conviction from a bench trial. Accordingly, "we recite the facts from the record in the light most favorable to the findings of the trial court and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Cowlishaw*, 2017 UT App 181, ¶ 2, 405 P.3d 885 (cleaned up).

get it finished," and, apparently, the mother leaving threw a wrench in those plans.

¶4     Afterward, Sorbonne and his younger sister, who witnessed the argument, told their father that they were leaving to go to Salt Lake City, Utah. This news upset the father, who still wanted his children's help with some work to be done on the ranch. After his children left the house, the father "stomped" on and broke a chair in anger.

¶5     Sorbonne and his sister got in a car and drove down a dirt road that led off the property. About one minute after they left, the father decided that he "was going to catch up with [Sorbonne] and apologize." The father hopped into his own vehicle and caught up with Sorbonne's car about a mile away from the house. The father pulled ahead of Sorbonne's car at about thirty-five miles per hour and with about five feet separating the sides of the two vehicles. Then the father "skidded to a stop" in front of Sorbonne's vehicle, forcing Sorbonne to stop as well but leaving enough space on the side of the road that Sorbonne could have driven around if he wanted.

¶6     The father climbed out of his vehicle, held his "arms out to the left and right," and told Sorbonne that he "was sorry and that [he] needed his help." Sorbonne got out of his car as the father approached. When the father was about eight feet away, Sorbonne opened the rear door of his car, retrieved a handgun, chambered a round, pointed the gun at his father, and said, "I'm going to fuckin' kill you."

¶7     The father told Sorbonne that "he was making a really big mistake and that he's gonna go to jail" and asked him to put the gun down. Sorbonne asked his younger sister to call the police, but his father told him that he did not "want to involve the police" because Sorbonne would end up "going to . . . jail." The sister fumbled with her phone in the car, and

the father volunteered to call the police himself. The father put the police on speaker phone and then retreated from the scene because he feared that he "was going to get shot."

¶8     Sorbonne resumed driving but soon encountered a police roadblock and peacefully surrendered himself into custody. The State then charged Sorbonne with one count of threatening with or using a dangerous weapon in a fight or quarrel.

*The Defense's Theory at Trial*

¶9     At his bench trial, Sorbonne argued that he was acting in self-defense and presented a different version of the foregoing events to back up that claim. According to Sorbonne and his younger sister, their father displayed multiple instances of erratic and angry behavior that day, causing them to fear that their father meant them harm when he cut them off on the road as they attempted to leave the property.

¶10     In further support of his self-defense theory at trial, Sorbonne presented evidence of his father's prior violent and abusive acts to "show the reasonableness of [Sorbonne's] fear which justified his threat of force." Much of this evidence was admitted, but some pieces were excluded.

¶11     The father himself admitted to multiple facts indicating that he had a violent character, including that (1) the mother obtained a protective order against him during their divorce proceedings; (2) he and the mother were "both abusive" to each other; (3) he sprayed starter fluid in the mother's eyes; (4) he spanked all his children until they were six or seven years old; (5) he punched the mother in the shoulder eleven years earlier; and (6) he once fought with Sorbonne and, while they were "wrestling," Sorbonne's head was smashed through a cupboard and Sorbonne's grandmother was knocked to the ground. However, the father categorically denied ever abusing any of his

children.[2] All these admissions and denials were admitted into evidence.

¶12    In addition to the father's admissions, the defense sought to introduce further evidence of the father's prior violent acts. Sorbonne's grandmother testified that there were "[m]any times" that the father was involved in road rage incidents. However, the district court struck that testimony after an objection from the prosecutor.

¶13    Sorbonne's younger sister testified that she had spoken to Utah's Division of Child and Family Services (DCFS). However, when trial counsel asked her if DCFS ever made "supported findings" that her father had abused her, the prosecutor made a hearsay objection. After some back and forth between the prosecutor and trial counsel, the district court expressed uncertainty about "what a DCFS-supported finding is." As the district court continued to discuss its uncertainty, trial counsel interjected, "Yeah. All right. No further questions. Thank you."

¶14    Sorbonne's older sister, who was not present during the events leading to Sorbonne's arrest, also testified. Trial counsel asked her, "Has [your father] ever hit you or put his hand around your throat or anything like that?" The older sister responded, "Yes." The prosecutor objected on the basis of relevance. Trial counsel responded that it was relevant because it demonstrated that the father had a "pattern" of violent or abusive conduct. The district court sustained the objection, ruling that the testimony was "not admissible under the Rules of Evidence."

---

2. Father also denied other violent acts, such as pulling a llama behind his car until the llama died—although, curiously, he did admit that "[w]e've all pull[ed] llamas behind our cars."

¶15 The district court determined that Sorbonne's actions were not justified by self-defense and found Sorbonne guilty as charged.

ISSUES AND STANDARDS OF REVIEW

¶16 Sorbonne raises three issues on appeal.[3] First, he argues that the district court erroneously concluded that pointing a gun

---

3. As noted by the dissent, the State (represented in this case by the Duchenne County Attorney) did not file a brief in response to Sorbonne's appeal. As a result, if we were convinced that Sorbonne had carried his burden of persuasion on appeal in his opening brief, we could affirm on that basis alone. *See, e.g.,* *Paxman v. King*, 2019 UT 37, ¶ 7, 448 P.3d 1199 (noting that an appellate court may "reverse, even absent any argument from an appellee, upon a determination that the appellant had made a prima facie showing of a plausible basis for reversal"); *Broderick v. Apartment Mgmt. Consultants*, 2012 UT 17, ¶ 19, 279 P.3d 391 (reversing where the appellants met their burden of persuasion on appeal and appellee's briefing was inadequate). However, we do not view the failure to file a brief as a confession of error on the part of the appellee. Our rules provide that the only sanction for failure to file a responsive brief is the possible exclusion of the appellee from oral argument. *See* Utah R. App. P. 26(c). As the dissent notes, appellees may make an informed decision to forego filing a responsive brief based on an assessment that the appeal is meritless. Of course, doing so risks the possibility that the court will disagree and conclude that the appellant has "made a prima facie showing of a plausible basis for reversal." *Paxman*, 2019 UT 37, ¶ 7. But our rules do not place appellees on notice that the failure to file a response brief will be treated as a confession of error. Therefore, we do not treat the State's failure to file a brief as dispositive but instead consider whether Sorbonne has carried his burden of persuasion on appeal.

is a use of deadly force rather than a threat of force under Utah's self-defense statute. According to Sorbonne, that error led the district court to incorrectly apply a heightened reasonableness standard to justify the use of deadly force when a lower standard should have been applied. "The proper interpretation and application of a statute is a question of law reviewed for correctness." *State v. Robertson*, 2017 UT 27, ¶ 14, 438 P.3d 491 (cleaned up).

¶17    Second, Sorbonne argues that the district court abused its discretion by excluding testimony concerning the father's prior violent and abusive acts. A district court's decision to admit or exclude testimony is reviewed for abuse of discretion. *State v. Perea*, 2013 UT 68, ¶ 31, 322 P.3d 624.

¶18    Third, Sorbonne argues that the district court erred by applying an objective reasonableness standard under the self-defense statute, contending that the district court should have instead applied a "modified objective standard or a subjective standard." Again, "the proper interpretation and application of a statute is a question of law reviewed for correctness." *Robertson*, 2017 UT 27, ¶ 14 (cleaned up).


ANALYSIS

I. Self-Defense Standard

¶19    Utah's self-defense statute provides two standards to determine whether a person's act of self-defense is justified. The level of justified force that may be used in self-defense depends on the degree of danger that the defendant reasonably believed he or she was facing. The first standard provides that an "individual is justified in threatening or using force against another individual when and to the extent that the individual reasonably believes that force or a threat of force is necessary to defend the individual or another individual against the

imminent use of unlawful force." Utah Code Ann. § 76-2-402(2)(a) (LexisNexis Supp. 2019).[4] The second standard provides in relevant part that an "individual is justified in using force intended or likely to cause death or serious bodily injury only if the individual reasonably believes that force is necessary to prevent death or serious bodily injury to the individual or another individual as a result of imminent use of unlawful force." *Id.* § 76-2-402(2)(b). In other words, a person is justified in using deadly force only if defending him- or herself against an equally serious threat of harm.

¶20    In this case, where Sorbonne held his father at gunpoint, there was some debate between the prosecutor and trial counsel over which standard applied. The prosecutor argued that holding someone at gunpoint qualifies as "using force intended or likely to cause death or serious bodily injury" and, therefore, Sorbonne must have reasonably believed that he or his sister was at risk of death or serious bodily injury to justify that level of force. *See id.* In contrast, trial counsel argued that merely pointing a gun at another person is not a *use* of deadly force but a *threat* of force and, therefore, Sorbonne need only have believed his actions to be reasonably necessary to defend himself or his sister from unlawful force of a lesser nature. *See id.* § 76-2-402(2)(a). Sorbonne argues that the district court erred by accepting the prosecutor's argument and incorrectly holding Sorbonne to a higher standard to justify his self-defensive actions.

¶21    However, on review of the record, we do not believe that the district court ruled on this issue. After hearing both parties' arguments, the court said, "Based on the evidence that the Court heard, the Court finds that the defendant is guilty of the charge

---

4. We cite the current version of the statute for ease of reference, as the current version does not differ in any relevant way from the version in effect at the time of Sorbonne's actions.

in the Information. The Court finds that his *use or threat of the weapon* was not necessary or reasonable under the circumstances and so I'm going to enter a conviction." (Emphasis added.) Utah's self-defense statute mentions the "threat" of force only with the lower standard that does not involve fear of death or serious bodily harm. *See id.* Thus, the court found that Sorbonne's act of pointing a gun at his father was unreasonable regardless of whether it was characterized as the "use" of deadly force or as a "threat." Because the district court did not resolve the issue of which standard applied and instead ruled that Sorbonne's conduct was unreasonable under either alternative, there is no ruling on that issue for us to review.

## II. Exclusion of Testimony of the Father's Prior Violent Acts

¶22 Sorbonne next argues that the district court abused its discretion by excluding three pieces of testimony regarding the father's prior violent acts: (1) the younger sister's testimony about whether DCFS found that the father abused her, (2) the grandmother's testimony about the father's road rage incidents, and (3) the older sister's testimony about whether the father "ever hit [her] or put his hand around [her] throat or anything like that." We first address the younger sister's testimony and conclude that there is no adverse evidentiary ruling to review. We then address the grandmother's and older sister's testimony and hold that we cannot, on this record, conclude that the district court abused its discretion in excluding it.

¶23 Although Sorbonne asserts that the district court excluded the younger sister's testimony on relevance grounds, the record does not support that proposition. When trial counsel asked the younger sister about DCFS's findings concerning her father, the prosecutor objected based on hearsay, not relevance. Following the objection, the district court expressed uncertainty about "what a DCFS-supported finding is." But before the district court actually ruled on the objection, trial counsel effectively

withdrew his question by interjecting, "Yeah. All right. No further questions. Thank you." Because trial counsel withdrew his question, the district court "never had an opportunity to rule on the issue," so the issue is "not properly before us." *See Hi-Country Prop. Rights Group v. Emmer*, 2013 UT 33, ¶ 15 n.5, 304 P.3d 851 (cleaned up).

¶24   Both the grandmother's and older sister's testimony concerned specific instances of prior violent acts on the part of the father: alleged incidents of road rage and another incident where the father allegedly hit or choked his oldest daughter. Sorbonne contends that the district court abused its discretion in excluding such testimony on relevance grounds because Utah's self-defense statute explicitly states that a factfinder may consider "the other individual's prior violent acts or violent propensities" and "any patterns of abuse or violence in the parties' relationship" when evaluating a self-defense claim. *See* Utah Code Ann. § 76-2-402(5)(d)–(e). However, this court has held that Utah Code section 76-2-402(5) does not "bestow defendants with the right to present evidence with broad narrative value of the alleged victim's violent character" but rather such evidence "must still satisfy the Utah Rules of Evidence to be admissible." *State v. Walker*, 2015 UT App 213, ¶¶ 10, 16, 358 P.3d 1120 (cleaned up). Accordingly, Sorbonne bears the burden of demonstrating that this testimony was admissible under the Utah Rules of Evidence. More specifically—because the testimony concerns the father's prior crimes, wrongs, or other acts—he must demonstrate that the testimony would be admissible under rule 404.

¶25   Sorbonne suggests two reasons why the grandmother's and older sister's testimony might be relevant, with the rules governing admission of the testimony varying based on the purpose for which it was offered. First, the testimony could have been offered to demonstrate that the father, not Sorbonne, was the first aggressor, and so Sorbonne acted in self-defense when he pulled the gun on his father. Because, under this theory, the

testimony was offered to demonstrate that the father acted in conformity with his violent character, rule 404(a) governed its admission. Under rule 404(a), proof of an alleged victim's propensity for violence "is limited to reputation and opinion testimony on direct examination." *State v. Campos*, 2013 UT App 213, ¶ 88, 309 P.3d 1160. Here, Sorbonne did not seek to admit evidence that his father had a violent reputation. Rather, he sought to introduce testimony concerning specific violent acts that his father had committed in the past. Accordingly, the testimony was not admissible to prove that the father was the first aggressor, and the district court did not abuse its discretion by excluding it.

¶26   Second, Sorbonne suggests that the testimony may have been offered to prove that Sorbonne reasonably feared that his father was going to harm him or his sister, regardless of whether that was actually the father's intent. Because such testimony would not be offered to show that the father acted in conformity with his violent character trait, specific instances of violence could be admissible under rule 404(b). But, under this theory, the testimony is relevant only if Sorbonne actually knew about the father's prior violent acts—otherwise the acts could have no bearing on Sorbonne's state of mind and whether he reasonably evaluated the risk that his father posed. *See State v. Gourdin*, 2015 UT App 309, ¶ 5, 365 P.3d 737. Here, nothing in the record indicates that Sorbonne knew about his father's alleged prior road rage incidents or about the incident in which his father allegedly hit or choked his older sister. Accordingly, we cannot, on this record, conclude that the district court abused its discretion by excluding the testimony on relevance grounds.

¶27   Based on the foregoing analyses, we conclude that the district court did not abuse its discretion by excluding any of the challenged testimony concerning the father's prior violent actions.

III. Use of Objective Reasonableness Standard for Self-Defense

¶28   Sorbonne's final argument is that the district court erred by applying an objective reasonableness standard when determining whether his conduct was justified as self-defense. On our reading of the record, it is unclear whether the district court used an objective or subjective standard. However, this court has previously held that an objective standard applies when evaluating the reasonableness of self-defensive actions, *see State v. Sherard*, 818 P.2d 554, 561 (Utah Ct. App. 1991) (holding that "reasonable" in the context of Utah's self-defense statute means "objectively reasonable"), and so we may presume that the court correctly applied that standard, *see Gerwe v. Gerwe*, 2018 UT App 75, ¶ 13, 424 P.3d 1113 ("A reviewing court will not presume from a silent record that the court applied an incorrect legal standard but must presume the regularity and validity of the district court's proceedings, and that it applied the correct legal standard, in the absence of evidence to the contrary." (cleaned up)).

¶29   Sorbonne acknowledges that this court has previously held that Utah's self-defense statute requires objective reasonability, but urges us to revisit that question and to adopt a "modified objective standard or a subjective standard." However, we are bound by the doctrine of "horizontal *stare decisis*" and owe "great deference to the precedent established" by earlier panels of this court. *State v. Legg*, 2018 UT 12, ¶ 9, 417 P.3d 592. And although we have the power to overrule our earlier cases, doing so requires us to "distinguish between weighty precedents and less weighty ones" by analyzing "(1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Id.* ¶ 10 (cleaned up). On appeal, Sorbonne has not engaged in this analysis and, therefore, has not convinced us that we should overrule our prior cases holding that acts of self-defense must be objectively reasonable. Moreover, although it

has not squarely considered this issue, our supreme court has also applied the objective standard in assessing whether a defendant is entitled to a self-defense jury instruction. *See State v. Berriel*, 2013 UT 19, ¶¶ 14, 16, 299 P.3d 1133. And "we are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court." *Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 (cleaned up)).

CONCLUSION

¶30    We decline to reach the question of whether pointing a gun at another is a use of deadly force or a threat of force because the district court found that Sorbonne's conduct was unreasonable under either standard. We also conclude that Sorbonne has failed to demonstrate that the challenged testimony concerning the father's prior acts of violence was admissible under the Utah Rules of Evidence. And we are not at liberty to overrule controlling precedent holding that Utah's self-defense statute requires acts of self-defense to be objectively reasonable. Accordingly, we affirm.

_____

CHRISTIANSEN FORSTER, Judge (concurring):

¶31    I agree with the lead opinion's reasoning as to all the claims of error Sorbonne has raised on appeal. In my opinion, Sorbonne has not met his burden of persuasion on any of the grounds raised in his appellate brief, so I am not bothered by the Duchesne County Attorney's failure to file any responsive briefing, *see supra* note 3, in this appeal. I therefore concur fully in the lead opinion.

¶32    However, I write separately to note my agreement with Sorbonne's suggestion that it might be time to reexamine the standard our courts use in assessing the reasonableness of the

responsive action exhibited by domestic violence victims or abused children in the self-defense context. Under Utah law, "[a]n individual is justified in threatening or using force against another individual when and to the extent that the individual reasonably believes that force or a threat of force is necessary to defend the individual or another individual against the imminent use of unlawful force," and "[a]n individual is justified in using force intended or likely to cause death or serious bodily injury only if the individual reasonably believes that force is necessary to prevent death or serious bodily injury to the individual or another individual as a result of imminent use of unlawful force." Utah Code Ann. § 76-2-402(2)(a)–(b) (LexisNexis Supp. 2019). The lead opinion correctly points out that currently in our law, "an objective standard applies when evaluating the reasonableness of self-defensive actions." *See supra* ¶ 28. This "objectively reasonable" standard was established by this court in *State v. Sherard*, 818 P.2d 554, 561 (Utah Ct. App. 1991), and applied by the Utah Supreme Court in *State v. Berriel*, 2013 UT 19, ¶¶ 14, 16, 299 P.3d 1133. But neither of those cases involved defendants whose claims of self-defense arose in domestic-violence or abusive-parent contexts, so neither appellate court had to wrestle with the issue of how to assess the reasonableness of such a defendant's self-defense claim. *See, e.g.*, *Berriel*, 2013 UT 19, ¶¶ 2–5 (aggravated assault and defense of a third person); *Sherard*, 818 P.2d at 556 (criminal homicide resulting from fight between two rival gang members); *see also Bechtel v. State*, 840 P.2d 1, 10–11 (Okla. Crim. App. 1992) ("Standards of reasonableness ha[ve] been traditionally characterized as either 'objective' or 'subjective.' Under the objective standard of reasonableness, the trier of fact is required to view the circumstances, surrounding the accused at the time of the use of force, from the standpoint of hypothetical reasonable person. Under the subjective standard of reasonableness, the fact finder is required to determine whether the circumstances, surrounding the accused at the time of the use of force, are sufficient to induce in the accused an honest and

reasonable belief that he/she must use force to defend himself/herself against imminent harm.").

¶33   It is true that at trial Sorbonne did not offer any expert testimony explaining the significance of the history of violence in his family or ask the district court to deviate from the "objectively reasonable" standard in considering the reasonableness of his claim of self-defense. Thus, Sorbonne cannot demonstrate that the district court erred. But going forward, I think our courts should reassess the appropriate standard to be applied in domestic violence and abuse situations in which self-defense by the abused person is at issue. I feel that it is time for Utah law to recognize that repeated abuse of an intimate partner or a child can cause that abused person to reasonably perceive a threat of imminent danger from conduct that may not appear imminently threatening to someone who had not been subjected to a repetitive cycle of violence.

———————

ORME, Judge (dissenting):

¶34    I respectfully dissent.[5] I have a definite and firm belief that Sorbonne's conviction was a product of multiple errors. *Cf. State v. Rincon*, 2012 UT App 372, ¶ 6, 293 P.3d 1142 ("When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made.") (quotation simplified). I decline to belabor the point, because I think the State concedes as much. In the face of Sorbonne's compelling

———

5. I share the sentiments expressed by Judge Christiansen Forster in her separate opinion, and so I join her opinion with the exception of its first paragraph.

arguments made in his brief, the State chose not to respond. At all. I think the fair inference is that the State concedes that one or more prejudicial errors were made and that Sorbonne's conviction should not stand.

¶35 It is important to note that an appellee is not strictly required to file a brief. *See generally* Utah R. App. P. 26(c) (stating that an appellant's failure to file a principal brief could result in dismissal of the case but providing for a less severe consequence if an appellee does not file a brief). The downside for an appellee not filing a brief is to forgo the opportunity to participate in oral argument. *See id.* ("If an appellee fails to file a principal brief within the time provided by this rule, or within the time as may be extended by order of the appellate court, an appellant may move that the appellee not be heard at oral argument."). That said, the importance of criminal cases all but invariably results in the State filing a brief to refute a defendant's arguments and urge affirmance *if* the State believes that position can be advanced in good faith.

¶36 There is a limited exception to this practice. The Criminal Appeals Division of the Utah Attorney General's Office, which bears the responsibility to represent the State when felony convictions are at issue on appeal, will occasionally forgo a responsive brief. But it does not cavalierly blow off its responsibility, leaving us to wonder whether the case has slipped through the cracks or whether the State has made an informed decision to confess error or to forgo filing a brief on some other basis. When the State does not file a brief in such cases, the responsible assistant attorney general will file a letter explaining why. Rarely, the State will concede that the appellant is correct and entitled to the relief sought on appeal. More commonly, it will refer to the Criminal Appeals Division being overworked and understaffed, resulting in the need to prioritize its work and concentrate the talents of its attorneys on those cases where the defendant has a colorable claim, forgoing

briefing in those cases where it is clear that the conviction is manifestly free of error and should be affirmed.

¶37    We have no such letter here—and not because the Criminal Appeals Division has deviated from its usual practice. This appeal is from a misdemeanor conviction and, thus, the county attorney—not the attorney general—has the responsibility to represent the State on appeal. The county attorney has filed no letter explaining why it has not submitted a brief. Unlike with the Criminal Appeals Division, we have no track record with the Duchesne County Attorney suggesting that its appellate caseload is so overwhelming that it must prioritize its appellate work, forgoing a brief in the easiest cases in the interest of concentrating its resources on the more weighty ones. On the contrary, our Clerk of Court reports that this is one of only two misdemeanor cases pending in the Utah Court of Appeals for which the Duchesne County Attorney is responsible—hardly an overwhelming appellate burden.

¶38    In the unique posture of this case, I take the State's—well, Duchesne County's—failure to file a brief to be tantamount to a concession that Sorbonne's conviction should be reversed. The so-called victim in this case had a history of violence at the expense of family members. He had been violent on the morning when his children sought to escape, and he tried to stop them in a very aggressive way. And come sentencing, the victim specifically urged the district court not to impose jail time on Sorbonne. In context, I believe the lack of a brief from the County—indeed, a lack of any communication from the County—is tantamount to a concession that, in the interest of justice, Sorbonne's conviction should be reversed. I agree, and I would vacate Sorbonne's conviction.

———————