**2023 UT App 105**

## THE UTAH COURT OF APPEALS

ZIONS BANCORPORATION, NA,
Appellant,
*v.*
SARAH N. SCHWAB,
Appellee.

Opinion
No. 20220584-CA
Filed September 21, 2023

Third District Court, Salt Lake Department
The Honorable Kara Pettit
No. 050905946

James K. Tracy, Joshua L. Lee, Taylor C. Jaussi,
KC Hooker, and David M. McGrath,
Attorneys for Appellant

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1     Zions Bancorporation, NA (Zions) obtained a judgment against Sarah N. Schwab in 2005. Eight years later, in 2013, Zions utilized the Renewal of Judgment Act (the Act) to renew its judgment against Schwab. Another eight years after that, in 2021, Zions sought to renew its judgment a second time. The district court denied Zions's motion to renew the judgment, concluding that the Act does not allow for a second renewal. Zions appeals that decision, asserting that the court erroneously interpreted the Act. Schwab did not file an appellate brief, and therefore Zions's arguments stand unopposed. After review of those arguments, we conclude that Zions has made at least "a prima facie showing of a plausible basis for reversal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (quotation

simplified). Zions has thus satisfied its burden of persuasion in this appeal, and we therefore reverse the district court's determination and remand for the court to enter an order granting Zions's request for a second renewal of judgment. But our conclusion is a non-merits disposition; we make no precedential determinations regarding the meaning of the Act's language.

BACKGROUND

¶2    Schwab opened a new bank account with Zions in 2004. Upon creation of the account, Schwab and Zions entered into a "Deposit Agreement" outlining the terms and conditions of their arrangement. The Deposit Agreement required Schwab to repay any amount that is overdrawn from the account. It also required that Schwab pay 18% annual interest on any overdraft amount, and that Schwab reimburse Zions for reasonable attorney fees and collection costs if Schwab does not comply with the agreement.

¶3    That same year, Schwab overdrew $4,816.96 from her account. Zions requested that Schwab repay this amount, but Schwab was unwilling or unable to do so.

¶4    In 2005, Zions sued Schwab for breach of contract, and sought to obtain a judgment for the overdraft amount, accrued interest, attorney fees, and collection costs. A few months later, the parties entered into a court-approved settlement agreement; under the terms of that agreement, Schwab acknowledged that she was indebted to Zions in the amount set forth in the complaint and that she would pay Zions $100 per month until the debt was paid in full. In exchange, Zions agreed to dismiss the case after receiving full payment. The agreement provided that if Schwab did not make any payment on time, the court was authorized to enter judgment against Schwab in the amount owed plus accrued interest, attorney fees, and collection costs.

¶5 After making only one payment, Schwab defaulted on the agreement. Zions then asked the court to enter a judgment against Schwab pursuant to the terms of the agreement. The court granted Zions's request, entering judgment (the Original Judgment) in October 2005 in the total amount of $6,126.95, consisting of "the principal sum of $4,716.96, plus accrued interest thereon in the amount of $875.99," collection costs of $126.50, and attorney fees of $407.50. The Original Judgment also provided for "accruing interest on the principal amount at the rate of 18.00% per annum," and contained a provision allowing for augmentation "in the amount of reasonable costs and attorney's fees expended in collecting said judgment."

¶6 Zions claims that, after obtaining the Original Judgment, it "began efforts to collect" on it but "was unable to collect enough funds to satisfy the Judgment in full" before the expiration of the Original Judgment's eight-year term. During this time, Zions obtained a writ of garnishment, but it is unclear what other collection methods, if any, Zions employed.

¶7 In 2013, just prior to the eight-year anniversary of the Original Judgment's entry date, Zions filed a motion to renew the judgment, invoking the Act. The district court granted this motion and entered a renewed judgment (the Renewed Judgment). In the Renewed Judgment, the court also updated the amounts Schwab owed—including interest, attorney fees, and collection costs—so that the total judgment amount was increased to $12,991.46.

¶8 Over the next eight years, Zions claims that it "continued its collection efforts but still was unable to collect enough funds to satisfy" the Renewed Judgment. So in 2021, just prior to the sixteen-year anniversary of entry of the Original Judgment, Zions again moved for renewal of judgment. Zions again relied on the Act, which provides that a "court of record may renew a judgment issued by a court if," among other things, "the motion is filed before the statute of limitations on the original judgment expires."

Utah Code § 78B-6-1802(2). Schwab did not register any opposition to Zions's motion.

¶9    But this time, the district court refused to sign the new renewed judgment (the Second Renewed Judgment) that Zions submitted, explaining in a "[n]ote from the Court" as follows: "[The] Original [J]udgment issued in 2005 and statute of limitations has expired. Per [the Act], [a] motion must be filed before the statute of limitations on the ORIGINAL [J]udgment expires." (Emphasis in original.) Zions then filed a motion for reconsideration, taking issue with the court's interpretation of the Act and claiming that, "by operation of the Renew[ed] Judgment, the expiration date of the Original Judgment was extended to October 13, 2021. Therefore, the 2021 [m]otion filed by Zions on October 6, 2021 was filed *prior to* the expiration of the statute of limitations on the Original Judgment." (Emphasis in original.) Zions also argued that the court's interpretation of the Act "would necessarily result in placing an artificial cap of one renewal for any given judgment," which "is clearly contrary to the plain language and intent of [the Act], which imposes no limit on the number of times a judgment can be renewed."

¶10    The court disagreed and denied Zions's motion for reconsideration, offering its view that the eight-year "statute of limitations on the [O]riginal [J]udgment expired" in 2013 and that, therefore, Zions's 2021 motion for a second renewal had not been filed before the statute of limitations on the Original Judgment expired. The court believed that it was "following the holding of" *Gildea v. Wells Fargo Bank, N.A.*, 2015 UT 11, 347 P.3d 385, in which our supreme court held that a judgment's duration period and the statute of limitations associated with that judgment "are two different, but concurrent" time frames, *see Gildea*, 2015 UT 11, ¶ 13. The district court interpreted *Gildea* as mandating the conclusion that "extending the duration of a judgment does not extend the statute of limitations on the judgment."

¶11 Zions timely appealed the court's denial of its second motion for renewal of judgment. Schwab did not file an appellate brief and has not otherwise participated in this appeal.

ISSUE AND STANDARD OF REVIEW

¶12 Zions claims that the district court erred in refusing to renew its judgment against Schwab for a second time. In particular, it claims that the court erred "in interpreting [the Act] to mean that renewal of an original judgment does not renew the limitations period on that judgment." "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (quotation simplified).

¶13 But here, Schwab did not submit an appellate brief or otherwise appear to contest the positions Zions is taking. In circumstances like these, as discussed more fully below, Zions is only required to "establish a prima facie showing of a plausible basis for reversal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (quotation simplified).

ANALYSIS

¶14 In this case, because Schwab did not file an appellate brief, Zions's claims on appeal stand uncontested. An appellee's failure to file an appellate brief "does not amount to an automatic default and consequent reversal of the lower court," *Farman-Rava v. Blu Auto Transport LLC*, 2021 UT App 93, ¶ 5 n.2, 498 P.3d 24 (quotation simplified), and it is not "a confession of error on the part of the appellee," *State v. Sorbonne*, 2020 UT App 48, ¶ 16 n.3, 462 P.3d 409, *aff'd*, 2022 UT 5. In such situations, we still must "consider whether [the appellant] has carried [its] burden of persuasion on appeal." *Id.*

¶15 But in cases like this one, an appellant's burden of persuasion is significantly lower. To satisfy that burden in a case in which its arguments stand unopposed, an appellant need only establish "a prima facie showing of a plausible basis for reversal." *AL-IN Partners*, 2021 UT 42, ¶ 19 (quotation simplified); *see also Mitchell v. Arco Indus. Sales*, 2023 UT App 70, ¶ 22, 533 P.3d 394 ("Our supreme court has previously held that it is appropriate to rule in favor of an appellant if the appellant establishes a prima facie showing of a plausible basis for reversal and the appellee fails to brief the argument." (quotation simplified)). "This is a lower standard than the typical burden of persuasion on appeal." *AL-IN Partners*, 2021 UT 42, ¶ 19. An appellant who meets this burden is entitled to reversal of the challenged decision in that appellant's individual case. But in such instances, given the lack of adversarial briefing on the matter at hand, we often indicate that our reversal "is a non-merits decision that is not intended to have precedential value." *See, e.g.*, *Mitchell*, 2023 UT App 70, ¶ 22 n.2 (quotation simplified).

¶16 Here, Zions has presented arguments that satisfy its burden to show a plausible basis for reversal of the district court's decision not to enter the Second Renewed Judgment. Stated another way, in our view Zions offers us an interpretation of the Act that is at least plausible, and has therefore established an entitlement to reversal of the court's decision in this case.

¶17 Under the Act, "[a] court of record may renew a judgment issued by a court if," among other things, "a motion is filed within the original action" and "the motion is filed before the statute of limitations on the original judgment expires." Utah Code § 78B-6-1802(1), (2). "Upon granting a motion for the renewal of judgment, the court shall enter an order which renews the original judgment from the date of entry of the order or from the scheduled expiration date of the original order, whichever occurs first, for the same amount of time as the original judgment." *Id.* § 78B-6-1804. And in a different section of the Utah Code, our

legislature has set forth the applicable statute of limitations for actions "brought . . . upon a judgment or decree of any court." *See id.* § 78B-2-311. In particular, Utah law provides that any such "action may be brought within eight years." *Id.*

¶18    When interpreting a statute, "our primary goal is to evince the true intent and purpose of the Legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (quotation simplified). "The best evidence of the legislature's intent is the plain language of the statute itself." *Id.* (quotation simplified). In reading statutory language, we "interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, ¶ 11, 368 P.3d 846 (quotation simplified). "When statutory language is ambiguous—in that its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis—we generally resort to other modes of statutory construction and seek guidance from legislative history and other accepted sources." *Marion Energy*, 2011 UT 50, ¶ 15 (quotation simplified).

¶19    Zions argues that the plain language of the Act "mandates that upon the grant of a motion to renew, the entirety of the original judgment is renewed, including its eight-year statute of limitations." As Zions sees it, the "plain meaning" of the word "'renew' is 'to make like new,' 'to restore to existence,' and to 'begin again,'" and "[b]y using the phrase 'renews the original judgment,' the legislature intended the original judgment to become 'like new' in all respects, both in its duration and in its limitations period." (Quoting *Renew*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/renew [https://perma.cc/595S-DRPF].) Zions posits that a judgment could not be "like new" if only its duration continued but its statute of limitations did not. And Zions asserts that its interpretation is consistent with our rules of civil procedure, which provide that "[t]he statute of limitations on the renewed

judgment runs from the date the order is signed and entered." Utah R. Civ. P. 58C(c).

¶20     In addition, Zions asserts that the term "original judgment," as used in the Act, is not meant to be read as a counterpoint to a "renewed judgment"; instead, Zions posits that the term "original judgment" is a term meant to provide clarity when discussing certain types of updated judgments sometimes referred to in the Utah Code and the Utah Rules of Civil Procedure, including the following: (1) foreign judgments that are later domesticated in Utah, as referenced in section 78B-5-301 of the Utah Code; (2) judgments that have been amended (for instance, augmented to add attorney fees or costs), as referenced in rules 52(b) and 54(e) of the Utah Rules of Civil Procedure; and (3) judgments that are later abstracted in order to be enforceable, as referenced in section 78B-5-201 of the Utah Code. Zions points out that it is helpful for the Act to distinguish "the initial entry of judgment" from these other types of updated judgments, and argues that this construct makes more sense than attempting to contrast "original judgment" with a "renewed judgment."

¶21     Next, Zions points to legislative history that supports its interpretation. The Act was passed by our legislature in 2011, and during a hearing regarding the bill that later became the Act, this particular question—whether the bill would allow a litigant to renew a judgment more than once—was specifically raised and discussed. A legislator inquired of the bill's sponsor whether a litigant would be able to renew a judgment "more than once" under the bill, and the sponsor responded that "conceivably you could," and another legislator offered his agreement with that statement. *See Hearing on* H.B. 10 *Before the H. Judiciary Comm.*, 59th Leg., Gen. Sess. 7:15-8:30 (Utah 2011) (statements of Rep. Derek Brown and Rep. Gage Froerer), https://le.utah.gov/av/committeeArchive.jsp?mtgID=8 336 [https://perma.cc/GU2E-K2QB]. In this vein, Zions posits that if our "legislature wanted to put a one-time cap on the number of

times a judgment could . . . be renewed, they would have done so explicitly, not by opaquely hiding the requirement in the phrase 'statute of limitations on the original judgment.'"

¶22   Finally, Zions asserts—with colorable basis—that our supreme court's opinion in *Gildea v. Wells Fargo Bank, N.A.* does not necessarily compel the result reached by the district court. *See* 2015 UT 11, 347 P.3d 385. In that case, an individual (Gildea) filed an action against Wells Fargo Bank seeking "to foreclose his judgment lien against property owned by Wells Fargo" just a few months before the judgment was set to expire. *Id.* ¶ 1. Gildea did not, however, seek renewal of the judgment. *Id.* ¶ 2. While the foreclosure litigation was pending, the judgment expired, and on that basis the court dismissed the lawsuit. *Id.* ¶ 8. Gildea then appealed, claiming that the filing of his foreclosure action had tolled the judgment's expiration. *Id.* ¶ 10. Among other arguments, Gildea posited that he could not have renewed his judgment because, had he done so, he would have lost his lien given that Wells Fargo—rather than the original judgment debtor—now owned the property. *Id.* ¶ 27. But the court disagreed and held that, under the Act, "a renewed judgment relates back to and extends the life of the original judgment," and therefore "a renewed lien likewise relates back to the original lien." *Id.* ¶ 28. The court stated that, under the Act, "renewing a judgment gives new life to a party's original judgment," and that Gildea was therefore "incorrect in arguing that renewing the judgment would have resulted in a new judgment and new liens." *Id.* ¶ 30. Zions points out—with some force—that this part of the *Gildea* opinion actually supports its interpretation of the Act.

¶23   Along the way to reaching its ultimate conclusion, however, the *Gildea* court made some statements that appear to cut the other way. The court noted that "[i]n many statute-of-limitations contexts, the filing of an action within the statutory period is sufficient to preserve the underlying claim. However, the Legislature has set a clear expiration period for a judgment,

which is different from a statute of limitations." *Id.* ¶ 2. Looking at both the Act as well as the statute setting forth the relevant statute of limitations for actions brought upon a judgment, the court noted that "the relevant statutory framework provides for two different, but concurrent, eight-year time frames: (1) an eight-year duration for a judgment, plus eight additional years if renewed, and (2) an eight-year statute of limitations for filing an action upon a judgment." *Id.* ¶ 13. These remarks led the district court, in this case, to conclude that the Act—which requires that a motion to renew a judgment be filed "before the statute of limitations on the original judgment expires," *see* Utah Code § 78B-6-1802(2)—does not allow for multiple renewals; in the court's view, the "statute of limitations on the [O]riginal [J]udgment" had expired in 2013, long before Zions's 2021 motion to renew the judgment a second time.

¶24 In our view, the application of *Gildea* to the facts at hand is a complicated endeavor. On the one hand, we certainly see the district court's point: if a judgment's eight-year term is different from the statute of limitations for filing an action based on that judgment, then renewing the judgment's term does not necessarily operate to extend the statute of limitations. And if the statute of limitations was not extended in connection with the first renewal of the judgment, then no additional renewals would be possible under the Act, given the Act's mandate that any motion to renew be filed "before the statute of limitations on the original judgment expires." *See id.* § 78B-6-1802(2).

¶25 But on the other hand, we also see Zions's point that our supreme court, in *Gildea*, was not presented with the same question presented here, namely, whether the Act allows for multiple renewals. And as Zions points out, in *Gildea* the court made sure to clarify that "a renewed judgment relates back to and extends the life of the original judgment," and that renewal includes renewal (or extension) of any liens associated with the judgment. *See Gildea*, 2015 UT 11, ¶ 28. The court went so far as to

state that "renewing a judgment gives new life to a party's original judgment," and rejected Gildea's assertion that renewal of a judgment somehow created a "new judgment." *Id.* ¶ 30.

¶26     On a question like this, where there appear to be colorable arguments on both sides of the matter, we hesitate—without robust adversarial briefing—to render any precedential decision. *See Broderick v. Apartment Mgmt. Consultants, LLC*, 2012 UT 17, ¶ 19, 279 P.3d 391 (stating that, "without adequate briefing from [the landlord] in response to [the tenants'] arguments, we are not comfortable addressing the merits of the broader questions of whether exculpatory clauses in residential leases violate public policy or whether they fall within the public interest exception," and concluding that there was "insufficient information to make a ruling that would affect countless landlords and tenants throughout Utah"); *Mitchell v. Arco Indus. Sales*, 2023 UT App 70, ¶ 22 & n.2, 533 P.3d 394 (concluding that the appellant had met his "appellate burden of making a *prima facie* showing of a plausible basis to rule in his favor," and therefore reversing the lower court's ruling in a "non-merits decision" (quotation simplified)); *see also Porenta v. Porenta*, 2017 UT 78, ¶ 32, 416 P.3d 487 ("We are rightly hesitant to address an issue of first impression without the aid of adequate adversarial briefing."). Definitive precedential resolution of this question—whether the Act allows for multiple renewals of judgment—should occur in a case in which both sides appear and brief the question.[1]

¶27     In this situation, however, we do not need to render a precedential on-the-merits decision in order to dispose of this

---

1. While we must wait for a case with robust adversarial briefing to decide this issue, our legislature is under no such constraint, and is of course free to amend the Act as necessary to clarify whether judgment creditors can obtain multiple renewals of the same judgment. To the extent our legislature is inclined to do so, we invite legislative clarification of the question.

appeal. To prevail here, given the absence of any appellate opposition, Zions need only make "a prima facie showing of a plausible basis for reversal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (quotation simplified). In our view, Zions has borne this burden in advancing the arguments outlined above. Zions's arguments certainly have strength, and offer at least a plausible basis for reversal of the district court's ruling. Accordingly, we reverse that ruling, but do so in a "non-merits decision that is not intended to have precedential value." *See Mitchell*, 2023 UT App 70, ¶ 22 n.2 (quotation simplified).[2] We offer no precedential opinion as to whether the Act allows for multiple renewals of a judgment; that question remains open, and ripe for resolution in a future case that comes to us following adversarial briefing.[3]

---

2. We are aware of our supreme court's statement—made in the context of addressing whether the court of appeals may issue memorandum decisions that counsel are discouraged from citing as precedent—that the court of appeals does not have "authority . . . to decide which of [its] decisions may be cited as precedent." *See Grand County v. Rogers*, 2002 UT 25, ¶ 16, 44 P.3d 734. Because this statement was made in a completely different context, we do not read it as shedding any light on the question of whether, and when, it is appropriate to render non-precedential decisions in appeals (whether uncontested or inadequately briefed) lacking robust adversarial briefing. Moreover, our supreme court's more recent guidance suggests that we are in fact empowered to issue non-merits decisions in such cases. *See AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76; *Broderick v. Apartment Mgmt. Consultants, LLC*, 2012 UT 17, ¶ 19, 279 P.3d 391.

3. Zions also requests an award of attorney fees incurred on appeal. This request is well-taken. The Deposit Agreement

(continued…)

CONCLUSION

¶28    We reverse the district court's denial of Zions's motion for renewal of judgment, and we remand the case with instructions for the court to allow Zions a second renewal of judgment and for such additional proceedings as may be necessary and consistent with this opinion.

————————

required Schwab to pay Zions's reasonable attorney fees, legal expenses, and collection costs if Schwab does not comply with the agreement, and on that basis Zions is entitled to the reasonable attorney fees it incurred in enforcing its judgment through this appeal. *See Utah Dep't of Social Services v. Adams*, 806 P.2d 1193, 1197 (Utah Ct. App. 1991) ("The general rule is that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal."); *Management Services Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980) ("The parties here agreed to pay reasonable attorney's fees if it became necessary to enforce the contract. If plaintiff is required to defend its position on appeal at its own expense plaintiff's rights under the contract are thereby diminished. We therefore adopt the rule of law that a provision for payment of attorney's fees in a contract includes attorney's fees incurred by the prevailing party on appeal . . . ."). On remand, the district court should quantify the amount of attorney fees Zions incurred in this appeal and should augment the judgment to include that amount.