**2023 UT App 150**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TARA JEANNE AMBOH,
Appellant.

Opinion
No. 20210678-CA
Filed December 14, 2023

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 201800404

Freyja Johnson and Emily Adams,
Attorneys for Appellant

Stephen Foote, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN D. TENNEY and AMY J. OLIVER concurred.

ORME, Judge:

¶1      Tara Jeanne Amboh appeals her misdemeanor convictions for operating a motor vehicle without insurance and for interfering with a peace officer, raising four claims of ineffective assistance of counsel. But because the State, represented in this matter by the Duchesne County Attorney (Duchesne County), did not file an appellate brief, Amboh's burden of persuasion is lower than that of a typical appeal in which both sides present argument. We hold that Amboh's challenge to her conviction for operating a motor vehicle without insurance satisfies this lower standard and reverse that conviction, but we affirm her conviction for interfering with a peace officer.

## BACKGROUND[1]

¶2     Duchesne County charged Amboh with interfering with a peace officer and operating a motor vehicle without insurance, class B and C misdemeanors, respectively.[2] *See* Utah Code Ann. § 76-8-305(1) (LexisNexis 2017); *id.* § 41-12a-302(2)(a) (2018). The case proceeded to a one-day jury trial in which the arresting officer (Officer) was the sole witness called to testify.

¶3     Officer testified that one night in December 2020, he was driving westbound on a highway in rural Utah when he saw Amboh driving eastbound on that same highway. As their vehicles approached each other, Amboh did not turn off her high beam headlights. *See id.* § 41-6a-1613(1)(c), (3) (2018) (noting that it is an infraction if the operator of a motor vehicle does not use a "low beam distribution of light or composite beam if the vehicle approaches . . . an oncoming vehicle within 500 feet"). And as they passed each other, Officer observed that the license plate on her car was not illuminated. For these reasons, Officer decided to turn around and pull Amboh over.

¶4     A license plate check revealed that the vehicle was registered to another individual. Amboh told Officer that individual was her mother. Officer also testified that the check further showed no insurance on the vehicle, i.e., "No insurance found, second letter sent." Officer explained that the reference to letters meant "that the Department of Motor Vehicles has sent out

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

2. Duchesne County also charged Amboh with another misdemeanor and an infraction, but the trial court dismissed those charges following a preliminary hearing.

letters stating that they don't have proof of insurance for your vehicle."

¶5     When Officer inquired of Amboh regarding insurance on the car, she stated that the car was insured by State Farm but that she did not have any proof of coverage. Officer told Amboh that if the car was uninsured, he "would have to impound the vehicle," and he then asked her to call her mother to get more information on the vehicle's insurance status. On the phone, Amboh's mother confirmed that the car was insured by State Farm. Officer then called State Farm to verify this assertion. Officer testified that he "spoke with one of the employees for State Farm, gave them the information for the vehicle and the registered owner and they said that the insurance is not active on the vehicle."

¶6     Officer testified that when he informed Amboh that the car was not insured, she became "openly hostile," stating that she was "going to get her lawyer on this" and that she believed they were on reservation land, meaning she was not required to have insurance. She also told Officer "that she had been stopped in Heber for no insurance and Heber told her that all she would have to do is fax over the proof of insurance and they let her go" and that "her mom usually has insurance on the vehicle." Because Officer intended to impound the car, he had Amboh call someone to come pick her up. Officer then returned to his vehicle to call for the impound and to fill out a citation, telling Amboh that he "would be back with her after she called for a ride." Officer was in possession of Amboh's driver license when he returned to his car, which he testified he typically parks between 15 and 20 feet behind the vehicles he pulls over.

¶7     While Officer was still completing the citation, Amboh's ride arrived and pulled up next to her vehicle. Amboh then exited her vehicle and approached her ride. Once Officer realized that Amboh did not intend to direct the driver to park in front of her

car but to immediately enter the vehicle, he started waving his hands, yelling, "stop" and "Tara, hold on. Tara." Amboh did not respond to his commands and entered the other vehicle, which then drove off. Officer testified that he believed Amboh to be detained and not free to leave at that time. But because her car was parked on the side of the highway, he had to remain in place to alert approaching vehicles of its presence with his lights. So instead of pursuing Amboh himself, he called for another officer to intercept her.

¶8     Officer remained in place until the tow truck arrived and then headed toward the location where the second officer had pulled Amboh's ride over. When he arrived, Officer saw Amboh sitting in the passenger seat. At this point in Officer's testimony, the prosecutor played for the jury footage taken from Officer's body camera of that second encounter.

¶9     The video began with Officer discussing the citation with Amboh, asking her to sign it, and attempting to take her fingerprint.[3] Amboh refused, stating, "No, I'm not going to do any of your stuff. Sorry. I'm refusing everything." She added, "I'll get everything that the courts need and I will be after you, man." The following exchange then ensued:

> OFFICER: Can you step out of the vehicle for me, please?
>
> [DRIVER]: Wow.
>
> [AMBOH]: Wow.
>
> OFFICER: Place your hands behind your back.

---

3. Although a copy of the video was not included as part of the record on appeal, the trial transcript includes what was said in the video.

[AMBOH]: Hey. Hey.

OFFICER: Place your hands behind your back.

[DRIVER]: You need to calm down.

OFFICER: Place your hands behind your back.

[AMBOH]: Wow.

OFFICER: Stop resisting.

¶10 Recognizing that "[w]e can hear a lot, [but] we can't see a whole lot" in the video, the prosecutor asked Officer to explain what had transpired. Officer stated that he had Amboh step out of the car and face away from him. Because she did not comply with his instruction to place her hands behind her back, he grabbed one of her wrists, and she yelled, "Hey." Officer recounted that when he proceeded to handcuff her, Amboh "pulled her hands away from me and started to yell, as you can hear" and "I had to tell her to stop resisting and pull her hands together to put her into handcuffs."

¶11 On cross-examination, Officer acknowledged that he did not inform Amboh that she was under arrest when he asked her to exit the car and that the video did not show Amboh's hands while he was trying to handcuff her because it was "too dark outside." Officer also confirmed that he did not mention Amboh's resistance to being handcuffed in his written report of the incident.

¶12 At the conclusion of Officer's testimony, the prosecutor rested the State's case. Amboh's trial counsel (Counsel) also rested the defense's case without calling any witnesses. Counsel did not move for a directed verdict, nor did he request a unanimity instruction or any other change to the jury instructions. The trial

court then read the instructions to the jury, and the case proceeded to closing argument.

¶13    During closing argument, the prosecutor argued to the jury, in relevant part, that circumstantial evidence proved that Amboh drove her mother's car "with the knowledge" that it was uninsured. He pointed to Amboh's statements to Officer that she had previously been pulled over in Heber for lack of insurance and that her mother "usually has insurance," meaning that "she knows that at times [her mother] doesn't have insurance." Regarding the charge for interfering with a peace officer, the prosecutor identified two instances for which the jury could convict Amboh: (1) when she got into the other car and drove away and (2) when she resisted Officer's efforts to handcuff her.

¶14    In response, Counsel argued, among other things, that the prosecution failed to prove that Amboh drove her mother's car knowing that it was uninsured. Regarding the interference charge, Counsel did not contest that Amboh drove off when her ride arrived but argued that "there was no testimony or evidence . . . that the officer gave, asking her to stay, saying that you're detained or arrested or hold on" and that although Officer considered her to be detained, there was reasonable doubt whether she "had knowledge of that." And regarding the handcuffing, Counsel argued that Officer's account that Amboh pulled her arm away was contested because it was not discernible in the video and because Officer made no mention of it in the subsequent written report.

¶15    The jury returned guilty verdicts on both counts. This appeal followed.

ISSUE AND STANDARD OF REVIEW

¶16    Amboh alleges four instances of ineffective assistance of counsel. Ordinarily, "when a claim of ineffective assistance of

counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Elkface*, 2023 UT App 24, ¶ 7, 527 P.3d 820 (quotation simplified), *cert. denied*, 534 P.3d 752 (Utah 2023). But, as discussed in more detail below, because Duchesne County did not file a brief in response to Amboh's arguments, we apply "a lower standard than the typical burden of persuasion on appeal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76. Namely, in such cases "an appellant need only establish a prima facie showing of a plausible basis for reversal." *Id.* (quotation simplified).

ANALYSIS

¶17   Amboh argues that Counsel was constitutionally ineffective for not objecting to inadmissible hearsay evidence and for not requesting that the jury be properly instructed on the constitutional unanimity requirement and the mens rea requirement. The former claim of ineffective assistance relates to her conviction for operating a motor vehicle without insurance, and the latter two claims relate to her conviction for interfering with a peace officer.[4]

¶18   A successful ineffective assistance of counsel claim requires a criminal defendant to establish that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient performance prong is satisfied when defense

---

4. Amboh raises one other claim of ineffective assistance relating to her conviction for operating a motor vehicle without insurance. But because she has made a prima facie showing on her primary challenge to that conviction, resulting in reversal, we have no need to address this other claim.

counsel's actions fall "below an objective standard of reasonableness." *Id.* at 688. This standard is "highly deferential" to counsel's performance, and the defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. And under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Failure "to establish either element defeats a claim for ineffective assistance of counsel." *State v. Cruz*, 2020 UT App 157, ¶ 17, 478 P.3d 631 (quotation simplified), *cert. denied*, 481 P.3d 1040 (Utah 2021).

¶19    But because Duchesne County did not file a brief or otherwise participate in this appeal, we do not reach the merits of these arguments in the usual way.[5] *See Zions Bancorporation, NA v. Schwab*, 2023 UT App 105, ¶ 15, 537 P.3d 273; *Mitchell v. Arco Indus. Sales*, 2023 UT App 70, ¶ 22 & n.2, 533 P.3d 394, *cert. denied*, 537 P.3d 1016 (Utah 2023). Although "[a]n appellee's failure to file a brief does not amount to an automatic default and consequent reversal of the lower court," *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76, the failure nonetheless deprives appellate courts "of adversarial briefing on the matter at hand," *Zions Bancorporation*, 2023 UT App 105, ¶ 15. *See Broderick v. Apartment Mgmt. Consultants, LLC*, 2012 UT 17, ¶¶ 18–20, 279 P.3d 391. For this reason, in such situations we apply "a lower standard than the typical burden of persuasion on appeal." *AL-IN Partners*, 2021 UT 42, ¶ 19. That is, "when an appellee fails to present us with any argument, an appellant need only establish a

---

5. This is not the first time that Duchesne County has elected to forgo filing an appellate brief. *See State v. Sorbonne*, 2020 UT App 48, ¶ 16 n.3, 462 P.3d 409, *aff'd*, 2022 UT 5, 506 P.3d 545; *id.* ¶ 34 (Orme, J., dissenting).

prima facie showing of a plausible basis for reversal."[6] *Id.* (quotation simplified). *See Mitchell*, 2023 UT App 70, ¶ 22 ("Our supreme court has previously held that it is appropriate to rule in favor of an appellant if the appellant establishes a prima facie showing of a plausible basis for reversal and the appellee fails to brief the argument.") (quotation simplified); *Prima facie*, Black's Law Dictionary (11th ed. 2019) (defining "prima facie" as "[a]t first sight; on first appearance but subject to further evidence or information").

¶20　We thus proceed to address Amboh's claims of ineffective assistance of counsel through the lens of this lower standard of review.

### I. Operating a Motor Vehicle Without Insurance

¶21　Amboh contends that Counsel was ineffective for failing to object to inadmissible hearsay evidence regarding the vehicle's uninsured status. Specifically, she challenges Officer's testimony that (1) the State Farm employee told him "the insurance is not active on the vehicle" and (2) the license plate check reported, "No

---

6. Although Utah appellate published decisions have largely applied this legal doctrine to civil cases, the doctrine is also applicable in the criminal context. *See State v. Sorbonne*, 2020 UT App 48, ¶ 16 n.3, 462 P.3d 409, *aff'd*, 2022 UT 5, 506 P.3d 545; *State v. Carter*, 2022 UT App 9, ¶ 69, 504 P.3d 179 (Hagen, J., dissenting), *aff'd*, 2023 UT 18, 535 P.3d 819. Nothing in *AL-IN Partners* suggests that this doctrine is limited to the civil context. To the contrary, such a limitation would run against the widely recognized principle that "[t]he interests at stake in civil cases are generally not as fundamental as those at stake in criminal cases." *Kelly v. Timber Lakes Prop. Owners Ass'n*, 2022 UT App 23, ¶ 42, 507 P.3d 357. *See id.* ("[T]he economic and property interests that are typically the subject of civil cases are not as fundamental as the liberty interests at stake in criminal cases.").

insurance found, second letter sent." She asserts that "[t]hese out-of-court statements were hearsay and not admissible under any hearsay exception" and that the prosecution presented no other admissible evidence at trial that the car was uninsured. We hold that Amboh has made a prima facie showing of ineffective assistance on this claim and therefore reverse her conviction for operating a motor vehicle without insurance.

¶22   Hearsay is a "statement" that "the declarant does not make while testifying at the current trial or hearing" and that is offered by a party "to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c)(1)–(2). Unless authorized by rule or statute, hearsay statements are inadmissible at trial. *See id.* R. 802. Here, it is clear from the record that the challenged statements were offered to prove the truth of the matter asserted—that the car Amboh was driving was uninsured. *See* Utah Code Ann. § 41-12a-302(2)(a) (LexisNexis 2018) ("[A]ny other person who operates a motor vehicle upon a highway in Utah with the knowledge that the owner does not have owner's security in effect for the motor vehicle is also guilty of a class C misdemeanor[.]").

¶23   Amboh asserts that the challenged hearsay statements did not fall under the "Records of a Regularly Conducted Activity" exception to the rule against hearsay. *See* Utah R. Evid. 803(6). Under that exception,

> A record of an act, event, condition, opinion, or diagnosis [is admissible] if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

*Id.*

¶24 Amboh contends that the State Farm employee's statement to Officer did not fall under that exception because it was not a "record." She also asserts that the exception likewise did not extend to the report generated by the license plate check because the prosecution did not establish that the conditions enumerated in rule 803(6)(A)–(C) were met through "testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." *Id.* R. 803(6)(D). Because this argument is plausible on a prima facie level, Amboh has satisfied her burden to show that the challenged statements did not satisfy that exception.

¶25 Additionally, to the extent the challenged hearsay statements were admissible at trial under another rule or theory, it was incumbent on Duchesne County to make such an argument in its brief had it filed one. No other hearsay exception is readily applicable to the challenged statements, and given the absence "of adversarial briefing on the matter at hand," *Zions Bancorporation, NA v. Schwab*, 2023 UT App 105, ¶ 15, 537 P.3d 273, we do not address alternative avenues through which the hearsay statements might have possibly been admitted at trial. *See State v. Johnson*, 2017 UT 76, ¶ 8, 416 P.3d 443 ("Our appellate system has developed along the adversarial model, which is founded on the

premise that parties are in the best position to select and argue the issues most advantageous to themselves, while allowing an impartial tribunal to determine the merits of those arguments."); *Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 ("An appellate court is not a depository in which a party may dump the burden of argument and research.") (quotation simplified). As matters stand, Amboh has made a prima facie showing that the challenged statements were inadmissible hearsay, and absent contradiction, we have no occasion to further address this aspect of Amboh's argument.

¶26    Amboh next argues that Counsel's failure to object to the inadmissible hearsay statements constituted deficient performance because "[t]he hearsay went directly to an element of the driving-without-insurance charge" and the prosecution "had no other evidence to prove that the car was uninsured." In light of the importance of Officer's statements to the prosecution's case, Amboh asserts that "[t]here was no reasonable basis for failing to object[.]"

¶27    "We must view a decision to not object in context and determine whether correcting the error was sufficiently important under the circumstances that failure to do so was objectively unreasonable—i.e., a battle that competent counsel would have fought." *State v. Ray*, 2020 UT 12, ¶ 32, 469 P.3d 871. As discussed in more detail below, without the challenged hearsay statements, the fact that the vehicle was uninsured was only weakly supported by other evidence. Accordingly, Amboh has made a prima facie showing that the challenged hearsay was crucial to the prosecution's case and was therefore "sufficiently important" to constitute "a battle that competent counsel would have fought." *Id.* Thus, under the lower standard applied in this case, Amboh satisfied the deficient performance prong of the ineffective assistance claim.

¶28 Amboh similarly argues that Counsel's deficient performance was prejudicial because the trial court would have likely sustained an objection to the hearsay statements, thereby depriving the prosecution of the only evidence it presented regarding the car's uninsured status.

¶29 "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland v. Washington*, 466 U.S. 668, 696 (1984). Our review of the record shows that absent the hearsay testimony, the claim that the car was uninsured was only weakly supported by other evidence. Although Officer also testified that Amboh told him "that she had been stopped in Heber for no insurance" at an unspecified time and that "her mom usually has insurance on the vehicle," these statements did not go directly to the vehicle's uninsured status at the time Officer pulled Amboh over. Similarly, the fact that Amboh did not have proof of insurance for the car, although probative, was not sufficient to establish beyond a reasonable doubt that the car was uninsured. The car was not Amboh's, and so the jury could have concluded that she did not know where to look, that the proof of insurance was simply misplaced, or that her mother had not printed it. Thus, because the remaining evidence that went to the vehicle's uninsured status was relatively weak, Amboh has made a prima facie showing "that there is a reasonable probability that . . . the result of the proceeding would have been different" if Counsel had objected to Officer's testimony about the car's insurance status on hearsay grounds. *Id.* at 694.

¶30 In sum, in the absence of any appellate opposition, Amboh has satisfied the lower burden of making "a prima facie showing of a plausible basis for reversal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (quotation simplified). We accordingly reverse her conviction for operating a motor vehicle without insurance.

## II. Interfering with a Peace Officer

¶31    As relevant here, the interference with a peace officer charge requires the prosecution to prove that

> the person knows, or by the exercise of reasonable care should have known, that a peace officer is seeking to effect a lawful arrest or detention of that person or another person and interferes with the arrest or detention by:
>
> . . .
>
> (b) refusing to perform any act required by lawful order:
>> (i) necessary to effect the arrest or detention; and
>> (ii) made by a peace officer involved in the arrest or detention; or
>
> (c) refusing to refrain from performing any act that would impede the arrest or detention.

Utah Code Ann. § 76-8-305(1) (LexisNexis 2017). Amboh's ineffective assistance of counsel challenges to this conviction both focus on the jury instructions for this charge. First, she argues that Counsel was ineffective for not requesting a unanimity instruction. Second, she asserts that the jury was not properly instructed on the mens rea element of the crime. We address each argument in turn.[7]

---

7. In the event we determine that evidence supporting these two claims of ineffective assistance of counsel is not in the record, "[o]ut of an abundance of caution" Amboh also seeks remand under rule 23B of the Utah Rules of Appellate Procedure to

(continued…)

A.      Unanimity Instruction

¶32      The Utah Constitution directs that "[i]n criminal cases the verdict shall be unanimous." Utah Const. art. I, § 10. It is insufficient for a jury to merely find "that a defendant is guilty *of a crime*" and render "a generic 'guilty' verdict that does not differentiate among various charges." *State v. Hummel*, 2017 UT 19, ¶ 26, 393 P.3d 314 (emphasis in original) (quotation simplified). *See State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951 (stating that the constitutional unanimity requirement "is not met if a jury unanimously finds only that a defendant is guilty of a crime"). Rather, a jury verdict must be unanimous "as to a specific crime" and "on all elements of a criminal charge for a conviction to stand," *Hummel*, 2017 UT 19, ¶¶ 28–29 (quotation simplified). *See State v. Case*, 2020 UT App 81, ¶ 21, 467 P.3d 893 ("Where the evidence indicates that more than one distinct criminal act has been committed but the defendant is charged with only one count of criminal conduct, the jury must be unanimous as to which act or incident constitutes the charged crime.") (quotation simplified), *cert. denied*, 474 P.3d 948 (Utah 2020). Otherwise, the State's burden of proof at trial is "effectively lowered," *see State v. Alires*, 2019 UT App 206, ¶ 25, 455 P.3d 636, *cert. denied*, 466 P.3d

---

supplement the record with such evidence. In conjunction with this motion, Amboh filed a declaration by Counsel stating that he did not request a unanimity instruction or that any changes be made to the elements instruction on the interference charge. "A remand under rule 23B will be granted only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Norton*, 2015 UT App 263, ¶ 3, 361 P.3d 719 (quotation simplified). Because, as discussed in more detail below, the additional facts Amboh alleges are insufficient to establish the prejudice prong of her ineffective-assistance claim, we likewise deny her motion for remand under rule 23B.

1076 (Utah 2020), because it is possible for the jurors to convict in situations where they "completely disagreed on which acts occurred or which acts were illegal" but they nonetheless "all agreed that [the crime] had occurred at some point," *State v. Mottaghian*, 2022 UT App 8, ¶ 56, 504 P.3d 773 (quotation simplified), *cert. denied*, 525 P.3d 1256 (Utah 2022). For this reason, "[w]here neither the charges nor the elements instructions link each count to a particular act, instructing the jury that it must agree as to which criminal acts occurred is critical to ensuring unanimity on each element of each crime." *Alires*, 2019 UT App 206, ¶ 23.

¶33   Amboh asserts that although she had been charged with only one count of interference with a peace officer, the prosecution stated during closing argument that she had committed the crime twice: when she left the scene of the first stop in her ride's car and when she resisted being handcuffed during the second stop. At trial, the jury was generally instructed that its "verdict must be unanimous; all jurors must agree," but it was not instructed that it had to unanimously agree on which alleged act constituted interference with a peace officer. Amboh therefore contends that Counsel was ineffective for not requesting a more specific unanimity instruction on the interference charge. But because Amboh has not made a prima facie showing of prejudice, we hold that Counsel was not ineffective in this respect.[8]

¶34   In determining whether a defendant was prejudiced by trial counsel's deficient performance, "a court hearing an ineffectiveness claim must consider the totality of the evidence

---

8. Amboh also argues that the trial court plainly erred in not properly instructing the jury on unanimity. Because "the prejudice test is the same whether under the claim of ineffective assistance or plain error," *State v. McNeil*, 2016 UT 3, ¶ 29, 365 P.3d 699, our resolution of her ineffective assistance claim on prejudice grounds likewise resolves her plain error claim.

before the judge or jury." *Strickland v. Washington*, 466 U.S. 668, 695 (1984). "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. *See Gregg v. State*, 2012 UT 32, ¶ 21, 279 P.3d 396 (stating that when evaluating prejudice, "an appellate court should consider the totality of the evidence, taking into account such factors as whether the errors affect the entire evidentiary picture or have an isolated effect and how strongly the verdict is supported by the record") (quotation simplified); *Alires*, 2019 UT App 206, ¶¶ 28–29 (holding that the defendant was prejudiced because "the evidence supporting [his] guilt was not overwhelming," "[t]he evidence was conflicting . . . as to which acts occurred," and "the surrounding circumstances were sufficiently ambiguous"). Here, because strong evidence supported her conviction, it is unlikely Amboh would have received a more favorable outcome at trial if the jury had been properly instructed on unanimity.

¶35   Regarding the instance where she left the scene of the first stop, Amboh argues that "the evidence supported reasonable doubt whether [she] knew or reasonably should have known that [Officer] was 'seeking to effect a lawful arrest or detention' at that point." She asserts that Officer did not testify that he asked her to stay or that he told her that she was not free to leave before he returned her driver license to her. "To the contrary," she contends that "[t]he fact that [Officer] told her to get a ride supports reasonable doubt about whether [she] knew or should have known [he] was seeking to effect an arrest or detention." She also asserts that Officer's testimony is unclear about whether she "heard him or could see him because it was 1:00 a.m. and dark."

¶36   But despite Amboh's assertion to the contrary, Officer testified that he told Amboh he "would be back with her after she called for a ride," thus directly communicating to her that the stop had not come to an end. Additionally, a reasonable person would have understood Officer's retention of her driver license as an

indication that she was not yet free to leave. Finally, Officer testified that as soon as he realized that Amboh did not merely intend to direct her ride to park in front of her but to enter the vehicle, he "yelled out" "stop" and "Tara, hold on. Tara," and then "waved" his hands and again "yelled 'stop'" as Amboh drove off. This, in addition to his testimony that he would have been parked somewhere between 15 and 20 feet from Amboh, strongly indicates that she should have, at the very least, heard his calls if not seen him waving after her as she entered the second vehicle.

¶37 Regarding the second act, that of resisting Officer's efforts to handcuff her, Amboh similarly argues that the evidence supported reasonable doubt whether she knew Officer was attempting to effect an arrest and whether she had the requisite mens rea when she pulled her arm away and was not simply "reacting out of confusion, instinct, or a pinch from the handcuffs." In support of this assertion, she points to the uncontested fact that Officer did not inform her that she was under arrest before proceeding to handcuff her. Amboh also contends that "the evidence was conflicting and contested" because Officer acknowledged that he did not include this instance of interference in his written report and because, due to darkness, the body camera footage did not show her pulling her arm away.

¶38 But the body camera footage presented at trial constitutes compelling evidence in support of Amboh's conviction. The audio from the video supported Officer's testimony that Amboh was "openly hostile" toward him. Amboh was heard refusing to sign the citation or to be fingerprinted, stating, "No, I'm not going to do any of your stuff. Sorry. I'm refusing everything," and, "I'll get everything that the courts need and I will be after you, man." Officer then asked her to "step on out of the vehicle" and instructed her three times, "Place your hands behind your back," to which Amboh responded, "Hey. Hey," and, "Wow." After

Amboh pulled her hand away, Officer told her, "Stop resisting." Even absent a direct statement that she was under arrest, a reasonable person in Amboh's position would have understood a police officer's thrice-repeated instruction to place her hands behind her back to mean that she was under arrest.

¶39 Furthermore, Amboh's responses of "Hey. Hey." and "Wow." are consistent with an understanding that she was being placed under arrest, to which she took exception. Although the darkness prevented the body camera from showing the handcuffing, Officer's response of "Stop resisting" after repeated calls to place her hands behind her back supports Officer's testimony that Amboh had pulled her hand away at that point. *See* Utah Code Ann. § 76-8-305(1)(c) (LexisNexis 2017) (stating that, among other things, a person "interferes with the arrest or detention by . . . refusing to refrain from performing any act that would impede the arrest or detention"). In any event, the act of refusing to comply with the repeated directions to place her hands behind her back in and of itself is sufficient to constitute interference with a peace officer. *See id.* § 76-8-305(1)(b) (stating that, among other things, a person "interferes with the arrest or detention by . . . refusing to perform any act required by lawful order: (i) necessary to effect the arrest or detention; and (ii) made by a peace officer involved in the arrest or detention"). Finally, Amboh's hostile attitude and refusal to cooperate before being asked to exit the car are indicative of Amboh's state of mind and intention to resist Officer's requests.

¶40 In sum, even under the lower burden of proof applied in this appeal, because strong evidence supports Amboh's conviction for interfering with a peace officer as concerns both instances of interfering, we are unconvinced that the jury would have acquitted her of the charge had it received a proper unanimity instruction. In other words, a reasonable jury, properly instructed on the need for unanimity, would have had no

difficulty in unanimously convicting her on either allegation that constituted interference with a peace officer.

B.      Mens Rea Instruction

¶41     The jury was instructed that it could not convict Amboh of interfering with a peace officer unless it found "beyond a reasonable doubt each of the following elements":

> 1. Tara Jeanne Amboh;
>
> 2. Had knowledge, or by the exercise of reasonable care should have had knowledge;
>
> 3. That a peace officer was seeking to effect a lawful arrest or detention of the defendant or another; and
>
> 4. Interfered with the arrest or detention by:
>
>> a. Refusing to perform any act by lawful order:
>>
>>> i. Necessary to effect the arrest or detention; and
>>>
>>> ii. Made by a peace officer in the arrest or detention;
>>
>> or
>>
>> b. Refusing to refrain from performing any act that would impede the arrest or detention.

¶42     Amboh contends that "although the instruction contains a knowledge requirement in the second numbered item, the grammar, sentence structure, and wording of the instruction make that knowledge requirement a distinct element rather than

the mens rea applicable to the interference act element." In other words, she asserts that the elements instruction fell short because it did not include a mens rea requirement as part of the fourth numbered item of the instruction. Accordingly, Amboh contends that Counsel was ineffective for failing to ensure that the jury was properly instructed on mens rea. But for many of the same reasons discussed above, Amboh has not made a prima facie showing of prejudice, and so this argument is unavailing as well.

¶43 Amboh's prejudice argument is almost identical to the argument she makes related to the unanimity instruction. She asserts that she was prejudiced because "the evidence supports reasonable doubt about whether [she] was aware that [Officer] was still attempting to 'effect an arrest or detention' at the time she got in her ride's car" because he "never told her she was arrested or detained or could not leave." She further contends that "the evidence again supports reasonable doubt about whether [she] was aware but consciously disregarded a risk that pulling her arm away interfered with an arrest" because Officer did not inform her that she was under arrest, the act of pulling her arm away could have been involuntary, Officer's testimony was contested because he did not note that instance of interference in his written report, and the act was not visible in the body camera footage.

¶44 For the same reasons discussed in Part II.A above, given the strength of the evidence supporting her conviction for interfering with a police officer, Amboh has not made a prima facie showing of prejudice, and this ineffective assistance of counsel claim likewise necessarily fails.

## CONCLUSION

¶45 Amboh has made "a prima facie showing of a plausible basis for reversal" of her conviction for operating a motor vehicle without insurance. *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021

UT 42, ¶ 19, 496 P.3d 76 (quotation simplified). Accordingly, we reverse that conviction and remand to the trial court for such further proceedings as may now be in order. But because Amboh has not made such a showing in challenging her conviction for interfering with a peace officer, we affirm that conviction.

—————